# United States Court of Appeals for the Federal Circuit

2007-1285

VOLKSWAGEN OF AMERICA, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Thomas J. Kovarcik, of New York, New York, argued for plaintiff-appellant.

Barbara S. Williams, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With her on the brief were Peter D. Keisler, Assistant Attorney General, and Jeanne E. Davidson, Director. Of counsel on the brief was Yelena Slepak, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York.

Appealed from: United States Court of International Trade

Senior Judge Richard W. Goldberg

# United States Court of Appeals for the Federal Circuit

2007-1285

VOLKSWAGEN OF AMERICA, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of International Trade in case no. 06-00222, Senior Judge Richard W. Goldberg.

_____

DECIDED: July 16, 2008

_____

Before RADER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and PROST, Circuit Judge.

Opinion for the court filed by Circuit Judge RADER. Concurring opinion filed by Senior Circuit Judge FRIEDMAN.

RADER, Circuit Judge.

Volkswagen of America, Inc. ("VW") seeks an allowance in the appraised value of automobiles entered and liquidated by the U.S. Customs Service ("Customs")[1] in 1994 and 1995, but later determined by VW to be partially defective. VW invokes a Customs regulation, 19 C.F.R. § 158.12, as a cause of action independent from the protest procedures in 19 U.S.C. § 1514 for challenges to appraisals of these allegedly

---

[1] The U.S. Customs Service is now the Bureau of Customs and Border Protection under the Homeland Security Act of 2002, § 1502, Pub. L. No. 107-296, 116 Stat. 2135, 2308-09 (Nov. 25, 2002), and the Reorganization Plan Modification for the Department of Homeland Security, H.R. Doc. 108-32, p. 4 (Feb. 4, 2003).

defective imports. Because neither § 1514 nor Customs' regulations create a cause of action for some defective goods, this court affirms the grant of summary judgment for failure to state a claim.

I

In 1994 and 1995, VW imported automobiles from Volkswagen Aktiengesellschaft and Audi Aktiengesellschaft. VW sold the imported automobiles in the United States with consumer warranties. Under those warranties, VW eventually repaired purported hidden defects. VW made some repairs within a few months of liquidation; others years later.

At the relevant time, 19 U.S.C. § 1514 provided:

(a) Finality of decisions; return of papers. Except as provided in subsection (b) of this section, section 501 (relating to voluntary reliquidations), section 516 (relating to petitions by domestic interested parties), section 520 (relating to refunds and errors), and section 521 (relating to reliquidations on account of fraud), decisions of the Customs Service, including the legality of all orders and findings entering into the same, as to--

(1) the appraised value of merchandise

. . .

(4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 337 of this Act [19 U.S.C. § 1337];

. . .

shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade . . . .

. . .

(c) Form, number, and amendment of protest; filing of protest.

(3) A protest of a decision, order, or finding described in subsection (a) shall be filed with the Customs Service within ninety days after but not before--

(A) notice of liquidation or reliquidation, . . . .

19 U.S.C. § 1514 (1995).[2]

Faced with an apparent 90-day post-liquidation deadline under § 1514, VW put both its feet in the door. It filed protests with Customs challenging the appraised value of the repaired automobiles and other protests against the value of automobiles that it expected would need repair later. VW based these latter requests on statistical models, which suggested that each imported automobile would, on average, have some latent, or hidden, defects. Invoking 19 C.F.R. § 158.12(a), VW sought an allowance in the appraised value for both classes of automobiles:

(a) Allowance in value. Merchandise which is subject to ad valorem or compound duties and found by the port director to be partially damaged at the time of importation shall be appraised in its condition as imported, with an allowance made in the value to the extent of the damage.

19 C.F.R. § 158.12 (2007).

Customs denied many of VW's protests, including all of those for repairs made after the protest filing date. VW appealed Customs' denial by filing an action with the United States Court of International Trade ("CIT") under 28 U.S.C. § 1581(a), the statutory section giving the trade court "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." 28 U.S.C. § 1581(a) (2007). The trial court held that it did not have jurisdiction over automobiles repaired after the date VW filed its protests because VW was not aware of the defects at the time of the protests. Volkswagen of Am., Inc. v.

---

[2] In 2004, Congress extended the deadline from 90 to 180 days. 19 U.S.C. § 1514(c)(3), amended by Pub.L. 108-429, § 2103, Dec. 3, 2004.

<u>United States</u>, 277 F. Supp. 2d 1364, 1369 (Ct. Int'l Trade 2003) ("<u>Volkswagen I</u>") (citing <u>Mattel v. United States</u>, 377 F. Supp. 955, 959 (Cust. Ct. 1974) ("a protest . . . must show fairly that the objection afterwards made at the trial was in the mind of the party at the time the protest was made"); <u>accord</u> <u>Saab Cars USA, Inc. v. United States</u>, 434 F.3d 1359, 1368 (Fed. Cir. 2006) (affirming the lower court's dismissal for lack of jurisdiction claims related to certain automobile because Saab provided no evidence that it was aware of defects in the automobiles at the time of protest). The trial court reasoned:

> Section 158.12, which provides for a refund of duties if the goods were defective at the time of importation, has no time limit to request the refund. Because VW filed its request as a protest, the Court does not opine at this time on whether VW could have filed a request for reconsideration under § 1520 or directly under § 158.12, and then protest a denial of that request.

<u>Volkswagen I</u>, 277 F. Supp. 2d at 1369 n.2.

At the same time, the trial court took jurisdiction over the automobiles that were repaired before the date of protest. <u>See</u> <u>Volkswagen I</u>, 277 F. Supp. 2d at 1367-69. However, the trial court found that VW did not show that many defects existed in its automobiles at the time of importation. <u>Volkswagen of Am., Inc. v. United States</u>, 484 F. Supp. 2d 1314 (Ct. Int'l Trade 2007). This decision is the subject of a separate appeal.

In early 2006, VW sent letters to Customs requesting an allowance in the value of the automobiles whose repairs occurred after the date of protest, again citing a claim for allowance under § 158.12. Customs stated at a pretrial conference that it would not issue a decision concerning the letters.

VW filed another appeal with the Court of International Trade under the Administrative Procedure Act ("APA"), alleging jurisdiction under 28 U.S.C. § 1581(i), the trade court's "residual" jurisdictional grant. The United States moved to dismiss for

lack of subject matter jurisdiction under CIT Rule 12(b)(1); for failure to state a claim upon which relief can be granted under CIT Rule 12(b)(5); and because the claims were time barred by the statute of limitations applicable to 28 U.S.C. § 2636(i). The trial court denied the United States' motion to dismiss for lack of subject matter jurisdiction, holding that VW's action falls under the language of paragraphs (1) and (4) of § 1581(i), and that jurisdiction was not available under any other subsection of § 1581. Volkswagen v. of Am., Inc. v. United States, 475 F. Supp. 2d 1385 (Ct. Int'l Trade 2007) ("Volkswagen II"). The trial court noted that VW could not have filed a valid protest under § 1581(a) because VW had not discovered the defects until after the 90-day time limit had passed. Id. at 1389.

Thus, the trade court granted the Government's motion to dismiss for failure to state a claim. The trial court reasoned that § 1514 precludes judicial review of VW's cause of action under the APA, which otherwise grants a right of review to "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . ." 5 U.S.C. § 702. Volkswagen II, 475 F. Supp. 2d at 1390. It further explained that § 1514 sets forth the procedures governing protests against Customs decisions. Thus, all of Customs' appraisals merge into the liquidation. As a result, the trial court held that any VW protests under § 158.12 had to comply with the procedures applicable to 19 U.S.C. § 1514. Id. at 1390-91. Thus, VW could not avoid the time limits imposed by § 1514 by bringing a separate cause of action under § 158.12. Id. at 1390. In essence, this decision meant that VW had no way to challenge the appraisal of goods with latent defects discovered after the expiration of the protest period.

The trial court did not reach the United States' motion to dismiss based on the statute of limitations applicable to 28 U.S.C. § 2636(i). Id. at 1392. VW appeals the dismissal. This court has jurisdiction under 28 U.S.C. § 1295(a)(5).

DISCUSSION

This court reviews grants of summary judgment as a matter of law. Gen. Elec. Co. - Med. Sys. Group v. United States, 247 F.3d 1231, 1234 (Fed. Cir. 2001) (citation omitted). Thus, legal determinations receive no deference, Home Depot USA, Inc. v. United States, 491 F.3d 1334, 1553 (Fed. Cir. 2007) (citations omitted). The same is true for statutory interpretations. Superior Fireplace Co. v. Majestic Prods. Co., 270 F.3d 1358, 1369 (Fed. Cir. 2001).

If § 158.12 provides an independent cause of action for appraisal of imports that were partially damaged at time of importation, then VW need not comply with the procedures and deadlines for a protest under § 1514. On its face, § 158.12 does not impose a time limit on an allowance for the partial damage. Nor does the regulation refer to § 1514 or its procedures. VW builds its argument on this ambiguity.

As a threshold matter, this court agrees with the Court of International Trade that VW's claim for an allowance under § 158.12 is really an action based on the APA. See Volkswagen II, 475 F. Supp. 2d at 1387-88. The APA provides a cause of action for persons "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 6 U.S.C. § 702 (2007). Although it did not invoke the APA in its complaint, VW effectively relied on that Act to show standing. Specifically, VW alleged that it "was affected and aggrieved by" Customs' refusal to recognize VW's claims for a § 158.12 allowance, and "accordingly, has standing to prosecute this action." Pl.'s

Compl., Court No. 06-00222, at ¶ 4 (Ct. Int'l Trade, Jun. 29, 2006) ("Complaint"). In its appellate briefs, VW challenged the "final agency action' . . . under applicable Administrative Procedure Act parlance." VW emphasized that only by exhausting its administrative remedies with respect to its § 158.12 claims could it commence the action.

Because VW's § 158.12 claim relies on the APA, this court must determine whether § 1514 precludes judicial review of the cause of action under 5 U.S.C. § 701(a)(1). Preclusion of judicial review by § 1514 is a function of "its express language . . .[,] the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." Block v. Cmty. Nutrition Inst., 467 U.S. 340, 345 (1984).

The express language of the statute in 1995 provided that "decisions of the Customs Service, including the legality of all orders and findings entering into same, as to--(1) the appraised value of merchandise; . . . shall be final and conclusive upon all persons . . . unless a protest is filed" within 90 days of liquidation, or "unless a civil action contesting the denial of a protest" is filed with the Court of International Trade. 19 U.S.C. § 1514(a), (c) (1995). On its face, § 1514 applied to challenges to Customs' appraisals. Section 158.12 directs Customs to adjust those appraisals to account for partial damage at the time of importation. If an importer believes that Customs did not properly appraise the value of the import, § 1514 provides the importer 90 days to file a protest. Otherwise, the appraisal becomes final. Section 158.12 does not say anything to the contrary.

As this court and its predecessor have confirmed, the language of § 1514 establishes liquidation as a final challengeable event in Customs' appraisal process. Findings related to liquidation—including valuation—merge with the liquidation. If an importer wishes to challenge the appraised value of merchandise, the importer must protest the liquidation. See Travenol Labs., Inc. v. United States, 118 F.3d 749, 753 (Fed. Cir. 1997) (stating that liquidation is "long honored in customs procedure as the final reckoning of an importer's liability on an entry" (citing Farrell Lines, Inc. v. United States, 667 F.2d 1017, 1020 (CCPA 1982))); United States v. Utex Int'l, Inc., 857 F.2d 1408, 1409-10, 1412 (Fed. Cir. 1988) (finding that all aspects of entry were merged in the liquidation and that "absent timely reliquidation or protest" the liquidation was final, and stating: "'All findings involved in a district director's decision merge in the liquidation. It is the liquidation which is final and subject to protest, not the preliminary findings or decisions of customs officers.'" (quoting R. Sturm, Customs Law & Administration § 8.3 Finality of Liquidation at 32, (3d ed. 1982))); United States v. Boe, 64 CCPA 11, 16 (CCPA 1976) (finding that filing a protest pursuant to § 1514 is "mandatory" for jurisdiction).

The language of § 158.12 and 19 U.S.C. § 1503 also demonstrates that an allowance under the regulation merges into liquidation. Section 158.12 provides that merchandise partially damaged at importation "shall be appraised in its condition as imported." 19 C.F.R. § 158.12 (2007) (emphasis added). The final appraisal occurs at liquidation. See 19 U.S.C. § 1503 (2007) ("[T]he basis for the assessment of duties on imported merchandise . . . shall be the appraised value determined upon liquidation . . . ."). Because § 158.12 grants an allowance on the value of merchandise, and because

the final valuation occurs at liquidation, the allowance under the regulation merges into liquidation. Thus, the procedures of § 1514 govern a claim under § 158.12.

Section 1514 provides several exceptions to the general procedures for challenging of Customs' decisions. Therefore, this court must evaluate whether a claim under § 158.12 can fit within any of those exceptions. In 1995, § 1514 provided that Customs' determinations falling under subsection (b) are not governed by the protest procedures and deadlines of subsections (a) and (c). Subsection (b), however, a provision dealing with countervailing and antidumping remedies, does not apply to a claim for an allowance under § 158.12. Section 1514 also provided that sections 337 (relating to unfair practices in import trade), 501 (relating to voluntary reliquidations), 516 (relating to petitions by domestic interested parties), 520 (relating to refunds and errors), and 521 (relating to reliquidations on account of fraud) of the Tariff Act remain exceptions from the general protest procedures and deadline prescribed in subsections (a) and (c). None of these listed exceptions involves the question of latent defects at time of importation. Thus, the exceptions in § 1514 do not apply to such goods.

In addition to the exceptions listed in § 1514, the Tariff Act provides other avenues to offset calculated duties. However, these exceptions apply to specific situations, none of which encompass an allowance for goods that are partially damaged at time of importation but remain in the U.S. stream of commerce. For example, 19 U.S.C. § 1520(c) provides that even if a claimant failed to file a valid protest under § 1514, Customs could reliquidate an entry if "a clerical error, mistake of fact, or other inadvertence . . . adverse to the importer" affected liquidation of the entry, and "the error, mistake, or inadvertence is brought to the attention of [Customs] within one year

after the date of liquidation." 19 U.S.C. § 1520(c) (1995). This court sees no way to attribute a latent defect to a clerical error or mistake of fact. To its credit, VW did not attempt to do so in its complaints or in its requests to Customs. Indeed the repairs on the automobiles at issue were not completed until 2000.

As another example, 19 U.S.C. § 1313 provided a drawback claim for 99 percent of the duty paid on nonconforming or defective merchandise that is re-exported or destroyed under Customs' supervision within three years after importation. 19 U.S.C. § 1313(c) (1995). This section gives a claimant three years after re-export or destruction to file a drawback claim. 19 U.S.C. § 1313(r) (1995). VW argues that a claim under § 158.12 is similar to a drawback claim under § 1313 because both focus on the condition of the merchandise at importation. According to VW, both types of claims differ from typical appraisals under 19 U.S.C. § 1401a. VW argues that typical valuation claims fall under the protest procedures of § 1514, but that claims under § 158.12 and § 1313 receive different procedures.

To the contrary, however, like typical appraisals, § 158.12 provides a partial allowance for damaged goods that remain in the U.S. stream of commerce. Section 1313 covers goods removed from that stream, justifying a nearly complete refund of duties paid. See Saab, 434 F.3d at 1370-71 (finding that § 1313 and § 158.12 address different circumstances and provide different remedies). Moreover, § 1313 provides clear procedures for filing a drawback claim. By contrast, § 158.12 is silent with respect to procedure, leaving the typical § 1514 procedures in play.

Another trade provision, 19 U.S.C. § 1401a, provides no escape from the time limitations imposed by § 1514. Section 1401a provides the basis for appraising

imported merchandise under the Tariff Act. In part, it provides that "imported merchandise shall be appraised . . . on the basis of . . . transaction value." 19 U.S.C. § 1401a(a)(1)(A) (2007). According to VW, § 1401a and § 158.12 fall from the same tree because they contain the term "appraised," but not "liquidation." VW argues that § 1514 does not cover fruit from this "appraisement" tree. Rather, according to VW, § 1514 covers only liquidation, which refers to the computation of duties, not to the valuation of merchandise—the focus of § 158.12. To support its argument, VW also cites to 19 U.S.C. § 1500, which discusses in separate subsections that Customs shall "fix the final appraisement of merchandise" and "liquidate the entry." 19 U.S.C. § 1500(a)-(b) (2007). VW also argues that Congress confirmed that claims can be brought under § 158.12 at any time when it allegedly incorporated the regulation into § 1401a. Section 158.12 was promulgated in 1972, and in 1979 Congress adopted the Trade Agreements Act of 1979, which included the current version of § 1401a. To support its argument, VW refers to the legislative history accompanying the Trade Agreement Act: "Where it is discovered subsequent to importation that the merchandise being appraised is defective, allowances will be made. (Regulation)." Statement of Administrative Action ("SAA"), H.R. Doc. No. 153 (96 Cong., 1st Sess., pt. 2 (1979)), reprinted in Department of the Treasury, Customs Valuation Under the Trade Agreements Act of 1979, at 47. The term "(Regulation)" is a reference to § 158.12.

The similarities between § 158.12 and § 1401a do not, however, remove defective goods valuations from the procedures of § 1514. Rather, as noted above, the language of § 1514 governs. In 1995, section 1514 provided the generally requisite procedure for challenging Customs' decisions related to "the appraised value of

merchandise." 19 U.S.C. § 1514(a) (1995). Moreover, the SAA that accompanied the Trade Agreements Act of 1979 supports the proposition that the procedures of § 1514 cover claims brought under § 158.12. Specifically, the SAA provided that an importer must file a protest to challenge Customs' appraisals:

> The right to appeal determinations of the customs value of imported merchandise will remain essentially the same as under current law and practice. The principal new feature is a requirement that the notice of decision include a written statement of the reasons for the decision. In addition, although the current notice of decision on protest advises the party of his right to judicial review, a specific requirement of this notice is included in the legislation.

SAA at 65 (emphasis added). While recognizing that Customs should make allowances in appraisal for latent defects, id. at 47, the SAA also confirmed that a claimant could only challenge an appraisal by filing a protest.

VW also argues that several regulations promulgated at the same time as § 158.12 show that the time restrictions of § 1514 should not apply in this case. VW points to 19 C.F.R. §§ 158.11, 158.13, and 158.14, which grant allowances in the valuation of certain goods. See 19 C.F.R. §§ 158.11, 158.13, 158.14 (2007). Specifically, § 158.11 provides an allowance for damaged merchandise with no commercial value, § 158.13 for moisture-and-impurities-damaged merchandise, and § 158.14 for condemned, perishable merchandise. To claim an allowance under each regulation, the importer must file an application with the port director within a relatively short deadline: four days for perishable merchandise under § 158.11, ten days for § 158.13, and five days for § 158.14. VW argues that the Secretary of the Treasury and Customs set different time limitations in these regulations, but not in § 158.12

The Secretary of the Treasury, however, cannot promulgate regulations for Customs contrary to the law. 19 U.S.C. § 66 provides: "The Secretary of the Treasury

shall prescribe . . . rules and regulations <u>not inconsistent with law</u>, to be used in carrying out the provisions of law relating to raising revenue from imports, or to duties on imports . . . ." 19 U.S.C. § 66 (2007) (emphasis added). And 19 U.S.C. § 1500 provides: "The Customs Service shall, under rules and regulations prescribed by the Secretary--(a) fix the final appraisement of merchandise by ascertaining or estimating the value thereof, under section 402 [19 U.S.C. § 1401a]." 19 U.S.C. § 1500 (2007). The Secretary of the Treasury had no authority under these mandates to promulgate a regulation that would violate the time limitations and protest requirements of § 1514.

Furthermore, the procedures and deadlines provided in the regulations cited by VW suggest that the Secretary of the Treasury followed these mandates when it promulgated those regulations. Those deadlines are within the deadlines set by § 1514. Moreover, the normal time limit set by § 1514 would be inappropriate given the nature of the goods, whose condition could deteriorate rapidly. Thus, the regulations cited by VW comport with the time limitations and protest requirements of § 1514. Similarly, the Treasury Department made § 158.12 consistent with § 1514.

As the trial court correctly noted in <u>Volkswagen II</u>, the legislative history of § 1514 supports the application of those provisions to goods covered by § 158.12. A Senate Report accompanying the Customs Courts Act of 1970 explained that § 1514 establishes a "single, continuous procedure for deciding all issues in any entry of merchandise, including appraisement and classification issues." S. Rep. No. 91-576, at 11 (1969). Given the clear mandate in 19 U.S.C. §§ 66 and 1500 to promulgate regulations "not inconsistent with law" to "fix final appraisement," the Secretary of the

Treasury presumably did not intend that § 158.12 would set forth an independent cause of action that would frustrate the "single procedure" purpose of § 1514.

The law has continued to consolidate challenges to appraisement of merchandise into § 1514. For example, the repeal of 19 U.S.C. § 1520(c) in 2004, Act of Dec. 3, 2004, Pub. L. No. 108-429, § 2105, 118 Stat. 2598 (2004), simultaneously amended 1514(a) to cover the clerical errors and mistakes of fact previously covered by § 1520(c), Act of Dec. 3, 2004, Pub. L. No. 108-429, § 2103, 118 Stat. 2597 (2004). As the scope of § 1514 has expanded over the years, no change has recognized a new exception for appraisal of goods with latent defects. Rather the law has reduced exceptions.

This court's decision in Saab does not alter this reasoning. VW submits that under Saab , claims under § 158.12 can be brought at any time. 434 F.3d at 1371 ("§ 158.12, by its terms, permits allowances for 'goods partially damaged when imported,' whenever that damage is discovered."). In context, however, Saab addressed only the narrow issue of identifying the damage at the time of importation for an allowance under § 158.12. Id. at 1369-70. This court found that the words "at the time of importation" modify the phrase "partially damaged," not the verb "found." Id. at 1370. Thus, the statement from the opinion that VW cites reflects this court's holding that a § 158.12 claim is not limited to instances when the port director discovers the partial damage at the moment of importation. See id. Saab did not address the relationship between § 158.12 allowance claims and the requirements of § 1514. In particular, Saab did not address whether § 1514 imposes a time limit to claim a partial

allowance under § 158.12 by filing a protest. Nor did Saab address this court's precedent that appraisal issues merges into liquidation.

Finally, VW's assertion that § 158.12 is not governed by § 1514 would lead to unworkable results. If § 158.12 provides an independent cause of action, an importer would be able to claim an allowance for partially damaged goods at any time and in any way it chooses. Entries would potentially stay open indefinitely, making liquidation meaningless and a protest optional. This impractical outcome would defeat the concept of § 1514 as the "single, continuous procedure for deciding all issues in any entry of merchandise, including appraisement and classification issues." S. Rep. No. 91-576, at 11 (1969).

Because this court finds that § 1514 precludes judicial review of VW's APA action, this court affirms the trial court's finding that VW did not state a cause of action for which relief could be granted. Even if VW's claim for an allowance under § 158.12 is not characterized as an APA action, its complaint does not state a claim for relief under CIT Rule 12(b)(5). VW alleged that "Customs appraised the subject merchandise under Transaction Value, pursuant to 19 U.S.C. § 1401(a(b)," and that "Customs did not grant plaintiff an allowance, pursuant to 19 C.F.R. § 158.12, in the Transaction Value for the latent manufacturing defects" in the imported automobiles. Complaint at ¶¶ 11, 12. VW also alleged that it "is entitled to an allowance, pursuant to 19 C.F.R. § 158.12 in the value of the subject merchandise due to the latent manufacturing defects therein." Id. at ¶ 15. VW did not, however, file a timely protest of the liquidations of the entries of the automobiles at issue in this suit. For these reasons, VW has not shown entitlement to any independent cause of action outside the typical protest procedure. A claim for

valuation of partially damaged goods must be brought in a protest of liquidation under § 1514.  Here, VW did not plead a necessary fact to state a claim under § 1514.

AFFIRMED

# United States Court of Appeals for the Federal Circuit

2007-1285

VOLKSWAGEN OF AMERICA, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of International Trade in case no. 06-00222, Senior Judge Richard W. Goldberg.

FRIEDMAN, <u>Senior Circuit Judge</u>, concurring.

The result the court reaches is a harsh one. Under 19 C.F.R. § 158.12(a), imported merchandise "found by the port director to be partially damaged at the time of importation shall be appraised in its condition as imported, with an allowance made in the value to the extent of the damage." In the present case, the imported automobiles were concededly "partially damaged at the time of importation" because of their latent defects. The kind and extent of those defects in particular vehicles, however, were not discoverable or the cost of repairing them determinable until after Customs had liquidated the duties and the time for protesting such liquidation or filing a judicial challenge thereto had expired. The effect of the court's decision, therefore, is that Volkswagen has had to pay duties based on the appraised value of the automobiles, although the actual amount Volkswagen received on the sale of the vehicles necessarily was reduced by its cost of making the repairs.

The court determines that this result is required by 19 U.S.C. § 1514, which provided that, with exceptions not here relevant, Customs "decisions . . . as to - - (1) the appraised value of merchandise . . . shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade."  On its face, this language supports the court's conclusion.

Even clear statutory language, however, may not always mean what it appears to say.  For many years the Declaratory Judgment Act, 28 U.S.C. § 2201, had provided that "any court of the United States" could issue such a judgment.  In 1969, there was no question that the United States Court of Claims was a "court of the United States." In United States v. King, 395 U.S. 1 (1969), however, the Supreme Court held that the Court of Claims had no "authority to issue declaratory judgments."  395 U.S. at 5.  It reasoned that "cases seeking relief other than money damages from the Court of Claims have never been 'within its jurisdiction,'" and that "[t]here is not a single indication in the Declaratory Judgment Act or its history that Congress, in passing that Act, intended to give the Court of Claims an expanded jurisdiction that had been denied to it for nearly a century."  395 U.S. at 4, 5.

It is arguable that, similarly, the provision in § 1514(a) making Custom's appraisal of the value of merchandise "final and conclusive" in the absence of a timely protest or a judicial challenge of the denial of the protest, assumes that such protest or judicial challenge could produce adequate relief to the protesting importer.  Here, however, there is nothing Volkswagen could have done, either in a timely protest or a judicial

challenge to its denial, that would have enabled it to obtain a refund of the portions of the duties it paid that represented its cost of repairing the latent defects that came to light only after liquidation had become final. Under this reasoning, § 1514(a) would not bar Volkswagen's suit in the Court of International Trade.

Analogy also could be drawn to the principle that exhaustion of administrative remedies is not required if it would have been futile to pursue that course. Glover v. St. Louis–San Francisco Ry. Co., 393 U.S. 324 330 (1969) (noting an "obvious exception[] to the exhaustion requirement—the situation where the effort to proceed formally with . . . administrative remedies would be wholly futile"). In the present case, it would have been futile for Volkswagen to have followed the protest and judicial review path.

I join the court's decision because of what I view as Congress' overarching design in this statutory scheme that once the time for filing a protest and judicial challenge of its denial has expired, that marks the end of any administrative and judicial proceedings seeking to overturn Customs' appraisal of the merchandise. Volkswagen's attempts to prolong such proceedings, until possibly many years after Customs' appraisal action has become final, appear inconsistent with this basic statutory design. If the result in this case does not accord with Congress' intent and design and the problem appears to Congress to be sufficiently significant to warrant changing the statutory scheme, Congress may do so. Such a change, however, is for the legislative and not the judicial branch.