# United States Court of Appeals for the Federal Circuit

—————————

**CHEMSOL, LLC AND MC INTERNATIONAL, LLC,**
*Plaintiffs-Appellants,*

v.

**UNITED STATES AND
UNITED STATES CUSTOMS AND BORDER
PROTECTION,**
*Defendants-Appellees.*

—————————

2013-1402, -1403

—————————

Appeals from the United States Court of International Trade in Nos. 11-CV-0516 and 11-CV-0517, Chief Judge Donald C. Pogue.

—————————

Decided: June 24, 2014

—————————

RUSSELL A. SEMMEL, Neville Peterson LLP, of Washington, DC, argued for plaintiffs-appellants. With him on the brief was GEORGE W. THOMPSON.

CLAUDIA BURKE, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendants-appellees. With her on the brief were STUART F. DELERY, Assistant Attorney General, and JEANNE E. DAVIDSON, Director. Of counsel was JUSTIN REINHART MILLER,

Attorney, International Trade Field Office, of New York, New York. Of counsel on the brief was YELENA SLEPAK, Attorney, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York.

———————————

Before O'MALLEY, MAYER, and WALLACH, *Circuit Judges*.

WALLACH, *Circuit Judge*.

Appellants Chemsol, LLC and MC International, LLC (d/b/a Miami Chemical) ("MCI") appeal the decision of the United States Court of International Trade ("CIT") dismissing their case for lack of subject matter jurisdiction. *Chemsol, LLC v. United States*, 901 F. Supp. 2d 1362 (Ct. Int'l Trade 2013). Because the CIT properly held it did not have jurisdiction over this case, this court affirms.

BACKGROUND

In 2009, Chemsol made six entries of citric acid, purportedly from the Dominican Republic, and in 2009 and 2010, MCI made thirteen entries of citric acid, purportedly from India (collectively, "the Entries"). Appellants claimed duty-free status for the Entries and therefore did not deposit any duties on entry. In 2010, United States Immigration and Customs Enforcement ("ICE") and United States Customs and Border Protection ("Customs") (collectively, "the Government") initiated an investigation to determine whether Chinese citric acid was being transshipped through other countries to evade antidumping and countervailing duties applicable to imports of citric acid from China. Customs suspected that Appellants' Entries were actually produced in China, but were transshipped through the Dominican Republic and India to avoid duties.

To complete the transshipment investigation, Customs extended the deadline for liquidation of the Entries

pursuant to 19 U.S.C. § 1504(b) (2006). For Chemsol, as of the time it filed this suit, Customs had extended liquidation for all of its Entries at least twice. As to MCI, as of the date of filing, Customs had extended liquidation once for all of its Entries, a second time for most of its Entries, and a third time for one Entry. It is undisputed that both Chemsol and MCI received notice of these extensions.

In response to the extensions, Appellants filed suit in the CIT on December 16, 2011, seeking "relief declaring the extensions unlawful such that the entries have therefore been 'deemed' liquidated by operation of law." *Chemsol*, 901 F. Supp. 2d at 1363; *see* J.A. 31, 43. Though the Entries were not yet deemed liquidated because the liquidation period was extended with notice, Appellants asserted the CIT had jurisdiction under 28 U.S.C. § 1581(i) (2006), the CIT's "residual jurisdiction" provision. The Government moved to dismiss for lack of subject matter jurisdiction,[1] claiming Appellants could not rely on § 1581(i) because they were first required to challenge the extensions before Customs by means of a post-liquidation protest, after which they could seek judicial review of any protest denial pursuant to 19 U.S.C. § 1515, the Tariff Act's "review of protests" provision. Jurisdiction over such a denial, the Government argued, would then be proper under 28 U.S.C. § 1581(a).

The CIT agreed, observing that "[i]n the time that has elapsed since the commencement of this action, ICE has completed its investigation and, but for [Appellants'] suit, Customs could complete its administrative process and

---

[1]  In the alternative, the Government moved to dismiss for failure to state a claim upon which relief may be granted. *Chemsol*, 901 F. Supp. 2d at 1365. Because the CIT dismissed this case for lack of jurisdiction, the CIT did not reach the other motion to dismiss. *Id.* at 1369 n.9.

liquidate [Appellants'] remaining entries."[2]  *Chemsol*, 901 F. Supp. 2d at 1365.  The CIT held "the statutory review process for challenging liquidation of [Appellants'] entries under . . . 19 U.S.C. §§ 1515–16[ ] and 28 U.S.C. § 1581(a), provides an adequate remedy for [Appellants'] claims," and accordingly granted the Government's motion to dismiss for lack of subject matter jurisdiction.  *Id.* at 1363–64 (footnote omitted).

Appellants filed these timely appeals.  This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

DISCUSSION

I. Standard of Review

This court reviews de novo the CIT's dismissal for lack of subject matter jurisdiction.  *Ford Motor Co. v. United States*, 688 F.3d 1319, 1322 (Fed. Cir. 2012).

II. Legal Framework

A. Jurisdiction

The CIT's limited jurisdiction is enumerated in 28 U.S.C. § 1581(a) through (i).  Subsection (a) vests the CIT

---

[2]  The CIT also held that Chemsol's claims relating to four of the nineteen Entries were moot because the Entries had auto-liquidated duty free in Appellants' favor.  *Chemsol*, 901 F. Supp. 2d at 1365; *see SKF USA, Inc. v. United States*, 512 F.3d 1326, 1329 (Fed. Cir. 2008) ("[A] court action [is] moot once liquidation occurs.").  Specifically, in response to an inquiry from the CIT, on March 7, 2013, the Government reported that one of Chemsol's Entries had auto-liquidated in its favor and three Entries were extended a third (and final) time.  J.A. 60–61.  As to MCI, the Government reported that three Entries had auto-liquidated in MCI's favor and nine Entries were extended a third (and final) time.  J.A. 63–64.

with "exclusive jurisdiction of any civil action commenced to contest the denial of a protest [by Customs]." Subsections (b) through (g) delineate other specific grants of jurisdiction. Subsection (i), the "residual jurisdiction" provision, provides:

> In addition to the jurisdiction conferred upon the [CIT] by subsections (a)–(h) of this section . . . , the [CIT] shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—
>
> > (1) revenue from imports or tonnage;
> >
> > (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
> >
> > (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
> >
> > (4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

28 U.S.C. § 1581(i).

While the residual jurisdiction provision is a "catch all provision," "[a]n overly broad interpretation of this provision . . . would threaten to swallow the specific grants of jurisdiction contained within the other subsections and their corresponding requirements." *Norman G. Jensen, Inc. v. United States*, 687 F.3d 1325, 1329 (Fed. Cir. 2012). Therefore, this court has repeatedly held that subsection (i) "'may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other

subsection would be manifestly inadequate.'" *Ford*, 688 F.3d at 1323 (quoting *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987)). Thus, if a litigant has access to the CIT under subsections (a) through (h), "'it must avail itself of this avenue of approach by complying with all the relevant prerequisites thereto'" unless the remedy available under another subsection is "manifestly inadequate." *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1292 (Fed. Cir. 2008) (quoting *Am. Air Parcel Forwarding Co. v. United States*, 718 F.2d 1546, 1549 (Fed. Cir. 1983)). A litigant asking the court to exercise jurisdiction over his or her claim has the burden of establishing that jurisdiction exists. *See Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991) (citing *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278 (1936)).

## B. Liquidation

When importing merchandise into the United States, "the importer of record shall deposit with [Customs] at the time of entry . . . the amount of duties and fees estimated to be payable on such merchandise," including applicable antidumping or countervailing duties. 19 U.S.C. § 1505(a). Customs generally must "liquidate" the entries "within 1 year from . . . the date of entry." *See id.* § 1504(a)(1). "Liquidation means the final computation or ascertainment of the duties . . . accruing on an entry," after which the final amount due (if any) is calculated and billed, completing the import transaction. 19 C.F.R. § 159.1 (2010); *Ford*, 688 F.3d at 1321 ("The process for bringing . . . customs transactions to final resolution is called 'liquidation.'"). If Customs does not liquidate the entry within one year, the entry is "deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted by the importer of record" on its entry documentation. 19 U.S.C. § 1504(a)(1). In other words, "deemed liquidation" is liquidation by operation of law.

Before the elapse of the one-year liquidation period, however, under § 1504(b)(1), Customs "may extend the period in which to liquidate an entry if . . . the information needed for the proper appraisement or classification of the imported or withdrawn merchandise, . . . or for ensuring compliance with applicable law, is not available to [Customs]." However, Customs may only extend the liquidation period three times, resulting in a total of four years from the date of entry within which Customs must liquidate the entries or they will be deemed liquidated. *Id.* § 1504(b); 19 C.F.R. § 159.12(e), (f).

Whether by Customs' action or by operation of law, liquidation is final unless an importer files a timely protest with Customs challenging its decision "within 180 days after *but not before* . . . [the] date of liquidation." 19 U.S.C. § 1514(c)(3)(A) (emphasis added). "Absent such a protest, the Customs decision is final" and is no longer subject to administrative or judicial review. *Hartford Fire*, 544 F.3d at 1292 (citation omitted). This court has confirmed that liquidation is the "final challengeable event" and "[f]indings related to liquidation," such as the need for extensions, "merge with the liquidation." *See Volkswagen of Am., Inc. v. United States*, 532 F.3d 1365, 1370 (Fed. Cir. 2008); *see also United States v. Utex Int'l Inc.*, 857 F.2d 1408, 1410 (Fed. Cir. 1988) ("'All findings involved in a [Customs] decision merge in the liquidation. It is the liquidation which is final and subject to protest, not the preliminary findings or decisions of customs officers.'") (citations omitted). This is also evident from the statute, which specifies that "decisions of [Customs], including the legality of all orders and findings . . . as to[, inter alia,] . . . the liquidation or reliquidation of an entry," are final unless a timely protest is filed. 19 U.S.C. § 1514(a)(5); *see also id.* § 1514(c)(3)(A) ("A protest of a *decision, order, or finding* described in subsection (a) of this section shall be filed with [Customs] within 180 days

after but not before . . . [the] date of liquidation or reliquidation.") (emphasis added).

### III. The CIT Properly Dismissed for Lack of Jurisdiction

#### A. Relief is Available to Appellants Under 28 U.S.C. § 1581(a)

The CIT held it lacked jurisdiction under § 1581(i) because Appellants' "challenge to Customs' extensions of the time for liquidation may be brought, after liquidation, by filing a protest and obtaining jurisdiction in this court under Section 1581(a)." *Chemsol*, 901 F. Supp. 2d at 1366. The CIT noted that Customs' actions in this case were "well within the four-year period allowed for extensions; Customs continues to actively investigate the appropriate liquidation for the entries." *Id.* Furthermore, the CIT stated, "[u]pon conclusion of that process and liquidation of the entries, the importers will have ample opportunity to raise any issues through the protest and judicial review process that culminates in § 1581(a)." *Id.*

Appellants argue the CIT erred in failing to find § 1581(i) confers subject matter jurisdiction over this action. In support, Appellants first argue the CIT failed to follow this court's opinion in *Ford*, 688 F.3d at 1323, which Appellants claim involves a "materially identical fact pattern[ ] and legal issues." Appellants' Br. 10 (capitalization removed).

In *Ford*, this court found jurisdiction under § 1581(i) available for a deemed liquidation claim in which Customs' inaction was at issue. In doing so, this court noted that "[i]t is undisputed that at the time of filing of Ford's complaint, [Customs] had not affirmatively liquidated any of the nine entries. It is also undisputed that the general one-year time period imposed by Congress for liquidating such entries had long since expired." *Ford*, 688 F.3d at 1321–22. This court then held (1) the case involved "a valid invocation of the court's residual jurisdiction, as the

importer could not have asserted jurisdiction under any of the other enumerated provisions of § 1581," and (2) "post-complaint efforts by [Customs] to clear the importer's accounts did not undo such jurisdiction." *Id.* at 1321. This court concluded that "[w]here, as here, there has been an allegation that [Customs] *unlawfully failed to make any* [*protestable*] *decision*, we cannot see how an administrative appeal could have been initiated pre-filing." *Id.* at 1327 (emphasis added).

Appellants insist the CIT erred when it found *Ford* distinguishable because, here, Customs extended the liquidation period with proper notice, whereas in *Ford* Customs failed to act altogether. Appellants contend this is a misreading of the facts in *Ford* because only the first claim of Ford's Complaint alleged that none of its entries was extended, while the second, third, and fourth claims of the Complaint alleged, in the alternative, that if Customs did issue extensions, such extensions "lacked notice, reasoning, or validity." Appellants' Br. 14. On this basis, Appellants argue "[t]he fact pattern and legal issues now before the Court are all but identical to [*Ford*] *in every material way*" because "[i]n both cases, the importer asserted that [Customs] *purported to extend liquidation* for certain entries, and *notice thereof was issued*, but either no reason or an invalid reason was given for the extensions, thereby rendering them void."[3] *Id.* at 12 (emphases added).

---

[3] Appellants also argue that "[b]y reversing the decision below, this Court can ensure that the CIT is consistent not just with the Circuit but also with itself." Appellants' Br. 17. In support, they compare two decisions of the judge who authored the decision below, which purportedly conflict. *Id.* Appellants quote this case and contend it "is in remarkable, direct contrast to an opinion of then-Judge Pogue thirteen years ago." *Id.* (citation

Appellants' reliance on *Ford* is misplaced. In contrast to *Ford*, here deemed liquidation had not yet occurred when Appellants filed their complaints, and Customs had extended the liquidation period pursuant to its statutory authority in 19 U.S.C. § 1504(b) to determine the country of origin of the Entries and the proper duty rate. There is no dispute that Customs properly notified Appellants of the extensions to the liquidation period. Thus, this case presents exactly the scenario in which "§ 1514's protest provisions [can] be invoked" because "'Customs . . . engage[d] in some sort of decision-making process,'" *Ford*, 688 F.3d at 1327 (quoting *Xerox Corp. v. United States*, 423 F.3d 1356, 1363 (Fed. Cir. 2005)), and, any objections to the validity of the extensions would be merged into the later liquidation. This court has also clarified that "all aspects of entry [are] merged in the liquidation and that 'absent timely reliquidation or protest' the liquidation [is] final." *Volkswagen*, 532 F.3d at 1370 (quoting *Utex*, 857 F.2d at 1412). Thus, "[i]f an importer wishes to challenge [an aspect of entry], the importer must protest the liquidation." *Id.* As the Government points out, "[t]his approach makes sense—it recognizes that the decision to extend the period for liquidation may be necessary to determine the ultimate country of origin, classification, or

---

omitted). As Chemsol's counsel well knows, however, the purportedly conflicting opinion by Chief Judge Pogue was authored prior to this court's cases expressly limiting the bounds of residual jurisdiction under § 1581(i). *E.g.*, *Norman G. Jensen*, 687 F.3d at 1328; *Hartford Fire*, 544 F.3d at 1292; *Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006); *see* Oral Arg. at 7:57–8:10, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/all/chemsol.html (counsel replying "yes" when asked whether there is "a line of cases that expressly limit . . . the bounds of residual jurisdiction under [§] 1581(i) that came out of this court").

rate assessed and, therefore, should be subsumed in the liquidation for purposes of administrative and judicial review." Appellees' Br. 13. Thus, while Ford rightfully sought a declaration that its entries were deemed liquidated, because the one-year liquidation period had elapsed without notice of any action by Customs, here such a declaration is not appropriate because Customs issued timely extensions, thereby preventing deemed liquidation.

In addition, unlike in this case, whether extensions had occurred was an issue very much in dispute in *Ford*. Indeed, in determining whether Ford had conceded this issue in a post-complaint statement, this court stated "[w]e read Ford's statement as only acknowledging that [Customs] had taken some administrative action with the purpose of extending liquidation, and not necessarily as conceding that extension had been effectuated." *Ford*, 688 F.3d at 1330. Thus, Appellants' statement that "[i]n both cases, the importer asserted that [Customs] purported to extend liquidation for certain entries, *and notice thereof was issued*," Appellants' Br. 12 (emphasis added), is a mischaracterization of the facts in *Ford*. Appellants' reliance on the other claims of Ford's Complaint also does not help their argument. This court recognized that Ford argued, in the alternative, that if any extension had been effectuated, Ford "received no notice of such an extension or suspension, and urged that notice was required for any putative extension to be effective." *Ford*, 688 F.3d at 1322. Here, there is no dispute that Appellants received proper notice. Appellants' insistence that notice was issued in both cases, and that this case is "materially identical" to *Ford*, is erroneous.

Appellants' suggestion that these cases are identical also ignores another substantial difference: in this case, Customs extended the liquidation period for the express purpose of undertaking a fraud investigation because it suspected that Appellants' Entries were fraudulently

made. In contrast, in *Ford* it was unclear whether Customs had extended the liquidation period and, if so, why extensions were necessary. There is no suggestion that *Ford* stands for the broad proposition that any challenge to an extension of liquidation is immediately reviewable under § 1581(i). Appellants' argument would vitiate the extension provision available to Customs under 19 U.S.C. § 1504(b) and prevent it from gathering additional information prior to final liquidation. As the CIT accurately observed:

> Customs' reason for extending the liquidation period for [Appellants'] imports is to allow ICE time to conclude its investigation of possible transshipment of goods. To allow [Appellants] to interrupt the administrative process currently underway by providing declarative relief would severely undermine Customs and ICE's ability to conduct meaningful investigations into possible fraudulent activity.

*Chemsol*, 901 F. Supp. 2d at 1368.

Appellants also argue jurisdiction over their claims is proper under § 1581(i) because no other basis of jurisdiction is available and adequate. They say that jurisdiction under subsection (a) is not available because Customs "has not made and might never make a protestable decision." Appellants' Br. 20 (capitalization removed). That is, Appellants contend, because Customs may never affirmatively liquidate the Entries before they are deemed liquidated in Appellants' favor, it is uncertain whether Appellants will ever need to protest a Customs decision. In contrast, Appellants continue, subsection (i) "offers an affirmative avenue to the court where an importer, *after the liquidation period has uneventfully elapsed*, can . . . go straight to court for a judicial declaration that such liquidation has occurred, and thereby forestall an improp-

er subsequent affirmative liquidation by [Customs]." *Id.* at 9–10 (emphasis added).

These arguments ignore established law. Congress created an express statutory scheme in § 1581(a) for administrative and judicial review of Customs' actions, providing for a protest before Customs and review of protest denials in the CIT. 19 U.S.C. §§ 1514(c)(3) ("A protest of a decision, order, or finding . . . shall be filed with [Customs] within 180 days after but not before . . . [the] date of liquidation or reliquidation."), 1515; 28 U.S.C. § 1581(a). Thus, the CIT "may adjudicate disputes stemming from denials of protests once the importer has exhausted its administrative protest options." *Ford*, 688 F.3d at 1327 (citing 28 U.S.C. § 1581(a)); *see United States v. U.S. Shoe Corp.*, 523 U.S. 360, 365 (1998) ("A protest . . . is an essential prerequisite when one challenges an actual Customs decision.").

Customs' decision to extend the liquidation period is a normal, if infrequent, part of its processing of entries, *see* 19 U.S.C. § 1504(b), and the propriety of an extension made with proper notice may only first be challenged before Customs in an administrative protest after liquidation. As noted previously, §§ 1504(b) and 1514(a) together contemplate that all determinations involved in a final liquidation, including extensions, are subsumed into the liquidation. Indeed, this court routinely reviews the CIT's adjudication of the validity of a Customs extension as part of its review of a protest denial under § 1581(a). *See, e.g.*, *Ford Motor Co. v. United States*, 286 F.3d 1335 (Fed. Cir. 2002); *Ford Motor Co. v. United States*, 157 F.3d 849 (Fed. Cir. 1998); *Intercargo Ins. Co. v. United States*, 83 F.3d 391 (Fed. Cir. 1996); *St. Paul Fire & Marine Ins. Co. v. United States*, 6 F.3d 763 (Fed. Cir. 1993); *Pagoda Trading Corp. v. United States*, 804 F.2d 665 (Fed. Cir. 1986).

Appellants apparently believe immediate review of extension decisions is necessary so they need not wait for

the four-year deemed liquidation period to end. Immediate review by the courts would extend the time to liquidate far past that deadline, as evidenced by this case. Further, such interim review might not obviate the need for a subsequent protest to final liquidation after the extension challenge is fully litigated. In other words, allowing earlier review of extension decisions delays the administrative process until final resolution of the extension challenge, at which point the administrative process resumes and could very well lead to an administrative protest of the final liquidation decision anyway. Indeed, earlier review could cut off legitimate investigatory work conducted by Customs, such as the investigation into the suspected fraudulent transshipment scheme in this case, preventing Customs from concluding its investigation.

Only where Customs fails to extend the liquidation period, or fails to notify the importers of an extension as required by statute (as occurred in *Ford*), may importers seek a declaration that their entries have liquidated by operation of law *once the deemed liquidation period has passed*. Where extensions are made with proper notice during ongoing investigations by Customs, however, § 1581(a) provides jurisdiction for importers who object to the final liquidation, or any interim decisions merged therein, including the decision to extend the liquidation period.

Appellants also argue the CIT erred in finding § 1581(a) would become available in the future because jurisdiction must be assessed at the time of filing. This was error, according to Appellants, because § 1581(i) jurisdiction is foreclosed only when another subsection of 1581 is available at the time of filing. In support, Appellants contend that "in every case where this Court has dismissed an action brought under § 1581(i) . . . , it has pointed to predicates for other bases for jurisdiction which existed *prior to, or at the time*, the complaint was filed." Appellants' Br. 23–24. Because there was no protestable

decision at the time Appellants filed their complaints, they contend § 1581(a) is not available to them.

Appellants are incorrect. For example, in *Norman G. Jensen*, upon which Appellants rely, this court stated, "jurisdiction over the present suit could be procured under another subsection of § 1581 simply by requesting accelerated disposition under § 1515(b) *and then* securing jurisdiction under § 1581(a)," 687 F.3d at 1331 (emphasis added), demonstrating that some future action was required on the part of the appellants in that case to secure jurisdiction under § 1581(a). It is the availability of jurisdiction under § 1581(i) that must be determined at the time of filing, not the immediate availability of possible resort to another subsection of § 1581. The CIT has repeatedly and correctly held that when relief is prospectively and realistically available under another subsection of 1581, invocation of subsection (i) is incorrect. *See, e.g.*, *Tianjin Magnesium Int'l Co. v. United States*, 533 F. Supp. 2d 1327, 1338 (Ct. Int'l Trade 2008); *Abitibi-Consol. Inc. v. United States*, 437 F. Supp. 2d 1352, 1356–59 (Ct. Int'l Trade 2006).

Appellants are correct that in *Ford* this court stated "that subject matter jurisdiction is determined at the time of the complaint, and . . . does not depend on subsequent events." *Ford*, 688 F.3d at 1324. This does not mean immediate review under the residual jurisdiction provision is appropriate when Customs is engaged in a statutorily-authorized administrative process that will lend itself to jurisdiction under another provision of § 1581. Indeed, the "mere recitation of a basis for jurisdiction [is] not . . . controlling," and courts "must look to the true nature of the action in a district court in determining jurisdiction." *Hartford Fire*, 544 F.3d at 1293 (citing *Norsk Hydro Can., Inc. v. United States,* 472 F.3d 1347, 1355 (Fed. Cir. 2006)). Here, the CIT properly found "the true nature of [Appellants'] action is a challenge to Customs' extensions of the time for liquidation. But Customs' actions, as

alleged in [Appellants'] complaints, are well within the four-year period allowed for extensions." *Chemsol*, 901 F. Supp. 2d at 1366. Unlike *Ford*, where Customs failed to take any reviewable action prior to the time the entries liquidated by operation of law, here subsection (a) is the appropriate avenue for challenging an extension made with proper notice. *See Hartford Fire*, 544 F.3d at 1292. Because jurisdiction under subsection (a) would be available, the CIT correctly declined to exercise jurisdiction under subsection (i). *See Norman G. Jensen*, 687 F.3d at 1330 ("[B]ecause Jensen could obtain jurisdiction under § 1581(a), jurisdiction under § 1581(i) does not exist." (citing *Hartford Fire,* 544 F.3d at 1292)).

## B. Relief Under 28 U.S.C. § 1581(a) is Not Manifestly Inadequate

Finally, Appellants argue that even if jurisdiction under § 1581(a) is available, it is "manifestly inadequate" because it cannot remedy Appellants' injury. According to Appellants, subsection (a) offers a remedy to importers who believe they have been injured by the liquidation process and the remedy is limited to the refund of excess duties. Here, Appellants contend such a remedy is inadequate because they have not deposited any duties; rather, they made their Entries duty free. Appellants' injury, they state, is the uncertainty that results from the ongoing investigation, and the relief they seek is a declaration that deemed liquidation has occurred. Thus, Appellants continue, the harm they suffered cannot be remedied by § 1581(a) through the protest procedure because the remedy would be limited to compensation for economic losses.

Appellants' arguments misstate both the facts and law, however. The statute does not allow Customs to delay liquidation "indefinitely," Appellants' Br. 19, or at its whim. Rather, the statute specifies that Customs may extend liquidation "if . . . the information needed for the

proper appraisement or classification of the imported or withdrawn merchandise, . . . or for ensuring compliance with applicable law, is not available to the Customs Service." 19 U.S.C. § 1504(b). Customs may only extend liquidation three times, resulting in a total of four years from the date of entry within which Customs must liquidate the entries or they will be deemed liquidated. *Id.*; 19 C.F.R. § 159.12(f). Four years is not "indefinite." To the extent Appellants contend their injury is the delay in processing the Entries, as noted, immediate review of extension decisions would extend the liquidation process far past the deemed liquidation period, and would not foreclose the possibility of further delays due to subsequent protests to final liquidation after the interim extension challenge is fully litigated.

Here, Customs extended liquidation with proper notice. As to Appellants' concern about "certainty in their liabilities and predictab[ility] in the processing of their customs obligations," Appellants' Br. 27, under the express statutory scheme established by Congress, Appellants' Entries will certainly be affirmatively liquidated by Customs or deemed liquidated in their favor by four years from the date of entry at the latest. Indeed, if Customs fails to liquidate within the four-year period and a deemed liquidation notice is not issued, Appellants could seek redress by filing a subsection (i) complaint seeking a declaration of deemed liquidation under *Ford*. That is not this case. As the CIT found:

> Final agency action has not occurred and the record shows that Customs' investigation continues to be active and has not lapsed into inactivity as it did in *Ford*. The matter can be brought under § 1581(a) after the [Appellants'] entries have liquidated and [Appellants have] filed an administrative protest, should [they] continue to feel at that point in time that [they have] been injured. In this context, [Appellants] cannot claim that the

§ 1581(a) remedy is manifestly inadequate as
there is no meaningful assertion of harm in letting
Customs process and liquidate their entries.

*Chemsol*, 901 F. Supp. 2d at 1368 (citations omitted).

"[A] belief that [a plaintiff] had no remedy under sub-
section 1581(a) [does] not make that remedy inadequate,"
*Hartford Fire*, 544 F.3d at 1294, and Appellants "cannot
take it upon [themselves] to determine whether it would
be futile to protest or not," *Int'l Custom Prods., Inc. v.
United States*, 467 F.3d 1324, 1328 (Fed. Cir. 2006).  For
these reasons, the CIT properly found that jurisdiction
under § 1581(a) was available and adequate, rendering
jurisdiction under subsection (i) improper.

## CONCLUSION

Accordingly, the decision of the Court of International
Trade is

## AFFIRMED