# United States Court of Appeals for the Federal Circuit

---

**FORD MOTOR COMPANY,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2011-1134

---

Appeal from the United States Court of International Trade in case no. 09-CV-151, Judge Gregory W. Carman.

---

Decided: August 10, 2012

---

GREGORY G. GARRE, Latham & Watkins, LLP, of Washington, DC, argued for plaintiff-appellant. On the brief was MATTHEW W. CALIGUR, Baker & Hostetler, LLP, of Houston, Texas. Of counsel was PAULSEN KING VANDEVERT, Ford Motor Company, of Dearborn, Michigan.

JUSTIN R. MILLER, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, of

Washington, DC; and BARBARA S. WILLIAMS, Attorney in charge, of New York, New York. Of counsel on the brief was YELENA SLEPAK, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York.

---

Before RADER, *Chief Judge*, DYK and REYNA, *Circuit Judges.*

REYNA, *Circuit Judge.*

This case concerns the jurisdiction of the Court of International Trade to review U.S. Customs and Border Protection's ("CBP's") assessments of duties on goods imported into the nation. The process for bringing such customs transactions to final resolution is called "liquidation." 19 C.F.R. § 159.1. In this case, the importer filed for declaratory judgment that CBP had failed to liquidate in the time required by law. Its complaint asserted jurisdiction under 28 U.S.C. § 1581(i), the Tariff Act's grant of residual jurisdiction to the Court of International Trade over matters concerning enforcement and administration of, inter alia, duty assessment. We hold that this was a valid invocation of the court's residual jurisdiction, as the importer could not have asserted jurisdiction under any of the other enumerated provisions of § 1581. We further hold that post-complaint efforts by CBP to clear the importer's accounts did not undo such jurisdiction, and reverse the Court of International Trade's contrary order. We also reverse the Court of International Trade's finding that one of the importer's subsequent pleadings conceded a dispositive issue, which the court held made certain claims non-justiciable. Finally, we vacate the court's discretionary dismissal of the importer's remaining claims, concluding that that order was too interlinked with the jurisdiction and justiciability errors to survive

appeal.  *See Ford Motor Co. v. United States*, 716 F. Supp. 2d. 1302 (Ct. Int'l Trade July 22, 2010) [hereinafter *Dismissal Opinion*].

## I

As automotive enthusiasts will know, in 2004, Ford Motor Company ("Ford"), owned and operated the British car maker Jaguar.  In 2004 and 2005, Ford imported Jaguar-brand cars from the United Kingdom into the United States.  On the cars' entry into the United States, Ford deposited estimated duty payments with CBP.  Ford subsequently concluded that its estimates were too high, and that it had overpaid on the duty actually owed.

Ford filed reconciliation entries with CBP, laying out its math and seeking a refund.  This appeal concerns nine such entries, filed between August 2005 and October 2006.  Ford hoped that CBP would review each entry, agree with the reasoning therein, and then liquidate the entry, upon which Ford would get a refund.  The total refund claimed by Ford, across the nine disputed entries, was about $6.2 million.

For purposes of this short summary, it is not necessary to chart each entry's detailed progress through CBP's reconciliation apparatus.  It is enough to fast-forward to April 15, 2009, and recount a few considerations as they appeared at that time, as it was on that date that Ford filed suit in this case.

It is undisputed that at the time of filing of Ford's complaint, CBP had not affirmatively liquidated any of the nine entries. It is also undisputed that the general one-year time period imposed by Congress for liquidating such entries had long since expired. *See* Tariff Act of 1930, § 504(a), 19 U.S.C. § 1504(a).

The third and final consideration comes from Ford's complaint. Ford alleged that, from the entries' filing until April 2009, CBP neither extended nor suspended the period available for liquidating the entries. 2d Am. Compl. ¶¶ 67–68, *Ford Motor Co. v. United States*, No. 09-151 [hereinafter *Ford*] (Ct. Int'l Trade Aug. 18, 2009), Dkt. #19; *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007) ("When a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction."). It is not disputed that CBP has authority, in certain circumstances, to extend the time to liquidate entries by up to three years. *See* Tariff Act of 1930, § 504(b), 19 U.S.C. § 1504(b); *see also* 19 C.F.R. § 159.12(a). But Ford said it received no notice of such an extension or suspension, and urged that notice was required for any putative extension to be effective. Because it viewed CBP as having exceeded the statutory deadline, in April 2009 Ford believed it was entitled to have the entries liquidated and the refunds paid to it. It therefore sought declaratory judgment deeming the nine entries liquidated by operation of law and ordering CBP to pay Ford the claimed refunds.

A few months after initiation of the lawsuit, there was new action from CBP. In June–August of 2009 CBP's computer system "auto-liquidated" three of the disputed entries. By the end of September, CBP had "reliquidated" them, which concluded the reconciliation process. Appellee Br. 7 & n.6. Ford administratively protested each of these acts before CBP and, when its protests were denied, initiated separate litigation before the Court of International Trade to appeal the denials. Then, in mid-2010, CBP announced that it had liquidated a fourth entry and that its computer system had auto-liquidated a fifth,

which was scheduled to be "reliquidated" by CBP later in the year.

In light of this post-complaint activity, and pursuant to a motion from the government, the Court of International Trade dismissed Ford's case in its entirety. *Dismissal Op.* The court's opinion contained three holdings relevant to this appeal. First, the court held that CBP's post-complaint activity stripped the court of subject matter jurisdiction as to the affected entries. *Id.* at 1310–11. Second, the court found that in a recent filing Ford conceded that CBP had extended the time for liquidation of five of the nine entries, so the court ruled that no case or controversy remained as to Ford's claims that there had been no extension. *Id.* Third, the court acknowledged that there remained four non-liquidated entries for which Ford continued to argue that CBP had acted unlawfully. The court concluded that it had subject matter jurisdiction over the case as to those claims, and that Ford had made no dispositive concessions, but declined to issue declaratory judgment. *Id.* at 1313–14, 1315 (diagramming holding).

Ford timely appealed. This court has jurisdiction over final judgments of the Court of International Trade. 28 U.S.C. § 1295(a)(5).

## II

This court reviews the Court of International Trade's dismissal for lack of subject matter jurisdiction de novo. *Heartland By-Prods., Inc. v. United States*, 424 F.3d 1244, 1250 (Fed. Cir. 2005). This court also reviews dismissals for non-justiciability de novo. *King Pharms., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1282 (Fed. Cir. 2010).

III

A

The first question presented by this appeal is whether the Court of International Trade correctly applied its own jurisdictional statute, 28 U.S.C. § 1581, and the precedent of this court to Ford's case. We are specifically concerned with the interactions between the enumerated grants of jurisdiction set forth in subsections (a) through (h) of this statute and the grant of residual jurisdiction in subsection (i). It is the residual grant of subsection (i)(4) that Ford contends covers this case:

> (i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for--
>
> > (1) revenue from imports or tonnage;
> >
> > (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
> >
> > (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
> >
> > (4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

28 U.S.C. § 1581(i).

This court has on several occasions considered subsection (i)(4)'s jurisdictional implications. Recognizing that litigants might be tempted to use subsection (i)(4)'s broad language to avoid various requirements of subsections (a) through (h), this court has repeatedly held that subsection (i)(4) "may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987); *see also Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006); *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992).

The government asks this court to simply apply those cases to this, and thus to affirm. The government argues now that since CBP has fully liquidated some of the entries, Ford can—and in fact did—dispute those liquidations administratively and, failing that, could (and did) bring a separate lawsuit under the jurisdiction enumerated in 28 U.S.C. § 1581(a) (conferring jurisdiction over lawsuits contesting protest denials under Tariff Act section 515). The availability of a remedy under subsection (a), says the government, blocks the path to jurisdiction under subsection (i).

The government's reasoning, however, masks a crucial fact: at the time Ford initiated this lawsuit, none of these liquidations had yet occurred. Ford could not, therefore, have exhausted the administrative remedies necessary to establish jurisdiction under § 1581(a).

Numerous opinions of the Supreme Court hold that subject matter jurisdiction is determined at the time of the complaint, and (at least in diversity cases) does not depend on subsequent events. *E.g.*, *Grupo Dataflux v.*

*Atlas Global Grp., L.P.*, 541 U.S. 567, 570–71 (2004) ("It has long been the case that 'the jurisdiction of the court depends on the state of things at the time the action is brought.' This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure.") (quoting *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539 (1824)) (internal citation and footnote omitted). Both the Supreme Court and this court have also held that the case-or-controversy requirement of Article III (also a matter of subject matter jurisdiction) must be satisfied at the outset and at all later stages. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732-33 (2008) (noting that a case or controversy "must exist at the commencement of the litigation" and "must be extant at all stages of review"); *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1337 (Fed. Cir. 2008); *GAF Bldg. Materials Corp. v. Elk Corp.*, 90 F.3d 479, 483 (Fed. Cir. 1996).

The government argues that the general time-of-filing rule, however well-established, should not control this case. It cites authority holding that the time-of-filing rule is not absolute in cases where the task is to assess federal question jurisdiction as opposed, for example, to diversity jurisdiction (which was at issue in *Grupo Dataflux* and other cases applying a strong time-of-filing rule). The government argues for a similar result here. It endorses the Court of International Trade's statement that it is § 1581(a), not 1581(i), which is "the preferred jurisdictional vehicle established by Congress." *Dismissal Op.*, 716 F. Supp. 2d at 1310. To that end, the government suggests that CBP should be privileged to apply its "normal administrative process." Having liquidated the claims, argues the government, CBP is entitled to have the propriety of those liquidations tested in litigation brought under § 1581(a) jurisdiction, and to permit juris-

diction under § 1581(i) subverts the Congressional intent. The government distinguishes this case from those strongly endorsing the time-of-filing rule by pointing out that CBP's actions here did not defeat the jurisdiction of the Court of International Trade, as happened in the other cases, but only modified its basis from § 1581(i)(4) to 1581(a)—though, in practice, the result here would be dismissal of the case.

The government is correct that, when it comes to assessing federal question jurisdiction, federal courts may consider developments emerging after the plaintiff's first-filed complaint. As already mentioned, the Supreme Court in *Rockwell International* endorsed the practice of considering amended complaints when determining federal question jurisdiction. But we note: the Court viewed this as no departure from the logical foundation of the time-of-filing rule:

> The rule that subject-matter jurisdiction "depends on the state of things at the time of the action brought," *Mollan*, 22 U.S. (9 Wheat.) at 539, does not suggest a different interpretation. The state of things and the originally alleged state of things are not synonymous; demonstration that the original allegations were false will defeat jurisdiction. So also will the withdrawal of those allegations, unless they are replaced by others that establish jurisdiction.

*Rockwell Int'l*, 549 U.S. at 473 (citation edited and other citations omitted).

Consistent with *Rockwell International*, this court has not hesitated to consider post-complaint developments when the case warrants. We are mindful of this court's decision in *Prasco*, where this court consented to take into account a plaintiff's recitation of post-filing events to

establish jurisdiction in its Amended Complaint. 537 F.3d at 1337. A later case, *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1382–83 (Fed. Cir. 2010), reaffirmed that certain baseline requirements, such as the existence of a justiciable controversy, had to be met at filing and had to remain at all later stages. *See also GAF Bldg. Materials*, 90 F.3d at 483. While these cases are from a different statutory realm than the present appeal, we find them nevertheless instructive.

Reviewing the law of our sister circuits, we note that they, like us, have not hesitated to consider post-complaint developments as required in some circumstances, though some have expressed doubt that the time-of-filing rule uniformly governs subject matter jurisdiction in federal question cases. *See, e.g.*, *Iowa Tribe of Kan. & Neb. v. Salazar*, 607 F.3d 1225, 1236–37 (10th Cir. 2010) (finding no subject matter jurisdiction where the Interior Department, post-complaint, took certain land into trust for an Indian tribe's benefit, an action for which Congress had expressly not waived sovereign immunity); *ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 93 (1st Cir. 2008) (declining to limit jurisdictional analysis to the initial complaint, where amended complaint set forth a proper jurisdictional basis); *Nilssen v. Motorola, Inc.*, 203 F.3d 782, 784–85 (Fed. Cir. 2000) (holding subject matter jurisdiction divested because federal cause of action had been dismissed without prejudice); *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1497–1502 (3d Cir. 1996) (finding no subject matter jurisdiction where the federal defendant, over whom original federal jurisdiction could have been exercised, had been dismissed from the case); *Shaw v. Gwatney*, 795 F.2d 1351, 1354 (8th Cir. 1986) (taking amended complaint into account in assessing federal question jurisdiction); *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 507–

08 (5th Cir. 1985) (finding no jurisdiction after plaintiff dropped claims that had invoked original federal jurisdiction); *Albert v. Kevex Corp.*, 729 F.2d 757, 760–62 (Fed. Cir. 1984) (finding no jurisdiction where plaintiff, whose claim was premised on existence of a patent interference, made a post-complaint disclaimer of all interfering subject matter), *reh'g denied*, 741 F.2d 396 (Fed. Cir. 1984).

Having reviewed these cases, we note that most of them—including *New Rock Asset Partners*, 101 F.3d at 1497–1502, on which the government relies—involve a federal claim or party removed from the case by the plaintiff.[1]  Such cases are easily reconciled with *Rockwell*

---

[1]    *See, e.g.*, *Iowa Tribe of Kan. & Neb.*, 607 F.3d at 1233 ("The time-of-filing rule is a judge-made doctrine, supported in the diversity context by sound policy considerations. . . . In contrast, the time-of-filing rule has been applied only rarely to federal question cases. . . . Accordingly, we reject plaintiffs' contention that the Supreme Court's statements regarding the time-of-filing rule in diversity cases control our analysis." (internal citations and quotation marks omitted)); *ConnectU*, 522 F.3d at 92 ("Notwithstanding the impressive pedigree of the time-of-filing rule, it is inapposite here. The letter and spirit of the rule apply most obviously in diversity cases, where the rule originated, and where heightened concerns about forum-shopping and strategic behavior offer special justifications for it. These concerns are not present in the mine-run of federal question cases, and courts have been careful not to import the time-of-filing rule indiscriminately into the federal question realm." (internal citations omitted)); *New Rock Asset Partners*, 101 F.3d at 1503 ("[T]he letter and spirit of the [time-of-filing] rule apply most clearly to diversity cases. The Supreme Court set out the rule in the diversity context. In addition, the Court crafted the rule for the removal of actions from state court, which involves a more lenient standard not relevant here. . . . The rule that jurisdiction is assessed at the time of the filing of the complaint has been applied only rarely to federal question cases. Moreover, in these rare

*International*, as they involve not changes in the underlying facts of the case, but changes in the legal theories plaintiff seeks to have applied to those facts. That is not what happened in this case.

Here, it is post-complaint action by the government as defendant that is presented as changing the jurisdictional picture. The appellate courts generally allow the government to defeat jurisdiction by post-complaint action only in the presence of some specific indication of Congressional intent that such action would defeat jurisdiction. In *Iowa Tribe of Kansas & Nebraska*, for example, the Tenth Circuit relied on Congress's express withdrawal of its sovereign immunity waiver in finding jurisdiction divested by the government's post-complaint land acquisition. 607 F.3d at 1237. Absent such an indication of legislative intent, the federal appellate judiciary has not hesitated to apply the general jurisdictional guidance of the time-of-filing rule. *See, e.g.*, *Kabakjian v. United States*, 267 F.3d 208, 212 (3d Cir. 2001) (applying the time-of-filing rule to retain jurisdiction irrespective of the government's post-complaint activity); *Kulawy v. United States*, 917 F.2d 729, 733–34 (2d Cir. 1990) (same).

Nonetheless, we need not decide in this case whether post-filing actions by a defendant can ever defeat jurisdiction in a federal question case under the time-of-filing rule because it is clear that where the jurisdictional question is really a question of exhaustion, a defendant cannot defeat jurisdiction by simply creating a new avenue for exhaustion of administrative remedies that had not been available at the time of the original filing. Indeed this precise question was decided by the Supreme

---

cases, the rule has often been applied axiomatically, without extensive discussion or analysis." (internal citations omitted)).

Court in *Roberts v. LaVallee*, 389 U.S. 40 (1967), and *Francisco v. Gathright*, 419 U.S. 59 (1974), within the context of examining the exhaustion requirement for habeas corpus review of state court convictions.[2]    In *Roberts* and *Francisco*, the Supreme Court held that a petitioner who has exhausted his state court remedies and then filed a habeas petition in federal court need not return to the state forum even where there has been an intervening change in the state court's construction of the federal constitution, creating the availability of a potential remedy in state court. *See Roberts*, 389 U.S. at 43; *Francisco*, 419 U.S. at 63. Thus, *Roberts* and *Francisco* made clear that subsequent availability of a remedy does not defeat prior satisfaction of a statutory exhaustion requirement.

Here, the government's post-filings actions in liquidating the entries may have opened up a new avenue for judicial review under 19 U.S.C. § 1581(a), but the actions cannot defeat subject matter jurisdiction under § 1581(i). The statute contains no indication of contrary intent. The government points to 19 U.S.C. § 1514(a) as purportedly requiring that post-complaint action by CBP divest any § 1581(i) jurisdiction, and redirect disputes over liquidation back into the administrative protest scheme. But we find no such provision there. Section 1514(a) states that the actions of CBP "in any entry, liquidation, or reliquida-

---

[2]    Under 28 U.S.C. § 2254(b)-(c), "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State," and "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."

tion," as well as "decisions of [CBP]," are final unless protested administratively or, following the administrative protest, judicially. It makes no endorsement of the administrative protest system for importers' claims that CBP unlawfully *failed* to act. Nor can we see how the administrative protest process would even address such a claim, as the process is predicated on CBP taking some action that then results in a protest. We therefore see no basis in § 1514(a) for abandoning the time-of-filing rule.

Nor do we see any contrary intent in the jurisdictional statute itself, § 1581. That statute enumerates that the Court of International Trade may adjudicate disputes stemming from denials of protests once the importer has exhausted its administrative protest options. 28 U.S.C. § 1581(a); *see also United States v. U.S. Shoe Corp.*, 523 U.S. 360, 365 (1998) ("A protest, as indicated in 19 U.S.C. § 1514, is an essential prerequisite when one challenges an actual Customs decision."). Subsection (a) does not reach the circumstance of this case, where the importer alleges that CBP failed to enter either an approval or a denial within the prescribed time. For § 1514's protest provisions to be invoked, "Customs must engage in some sort of decision-making process[.]" *Xerox Corp. v. United States*, 423 F.3d 1356, 1363 (Fed. Cir. 2005). Where, as here, there has been an allegation that CBP unlawfully failed to make any such decision, we cannot see how an administrative appeal could have been initiated pre-filing, and we decline to hold that subsection (a) permits the importer to be forced back into the administrative process post-complaint.

Neither do § 1581's subsections (b)–(h) require any different outcome. Each of these subsections enumerates the Court of International Trade's jurisdiction in matters not directly presented by this case. No party contends

that Ford could have brought the present claim under any of those subsections.

Finally, we do not embrace the argument, presented by the government and inherent in the trial court's opinion, that this court's opinions concerning subsection (i) (the residual grant of jurisdiction) provide a platform for the Court of International Trade to depart from the time-of-filing rule in this case. This court has held that § 1581(i) jurisdiction is unavailable to an importer if another of § 1581's jurisdictional subsections could have been asserted. *E.g., Int'l Custom Prods.*, 467 F.3d at 1327. Those opinions turn on the jurisdictional options that were or could have been available to the plaintiff at the time of his complaint. They express no view at all concerning the jurisdictional effect of post-complaint action by CBP in a case where plaintiff at the time of filing his complaint had no jurisdictional option save subsection (i).

Having concluded that the government cannot defeat jurisdiction under section 1581(i) by creating a new remedial opportunity under section 1581(a) which had not been available at the time of the original filing, we must determine whether Ford's Second Amended Complaint set forth proper grounds for the Court of International Trade to exercise § 1581(i)(4) jurisdiction at the time the lawsuit was filed. We hold that Ford met this requirement.

Ford alleged that as of April 15, 2009, CBP had unlawfully failed to either timely liquidate the entries at issue, or to extend the time for liquidation, and that Ford was thus entitled to declaratory judgment of liquidation as a matter of law. With no administrative action to protest, none of the jurisdictional avenues enumerated in subsections (a) through (h) of § 1581 were available to Ford. These allegations satisfied this court's require-

ments for the exercise of jurisdiction under subsection (i)(4). *Conoco, Inc. v. U.S. Foreign-Trade Zones Bd.*, 18 F.3d 1581, 1590 (Fed. Cir. 1994).

The government's counterargument is unpersuasive. It urges that the entries in this case were, in fact, properly extended, even at the initiation of this lawsuit. The government therefore suggests that Ford's declaratory judgment case was premature and therefore not "ripe." This argument fails for two reasons. First, arguments concerning the merits of Ford's claims are not appropriate for this jurisdictional inquiry. It is well-established that a court's subject matter jurisdiction concerns its authority to take up a case, and not the case's ultimate resolution. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998). Ford invoked the Court of International Trade's authority by alleging unlawful action by CBP that could not be remedied with a lawsuit under § 1581(a)–(h). The government's protest that Ford is not actually entitled to relief in this case can be taken up on a motion to dismiss for failure to state a claim on which relief can be granted or on summary judgment—not on a motion to contest jurisdiction. *See also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006).

The government's invocation of the justiciability doctrine of ripeness is also unavailing. The ripeness inquiry in a declaratory judgment case such as this asks whether the case presents "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). There is no question here that Ford's complaint, by contending that CBP had failed to take action within the statutory deadline and so waived

its right to contest Ford's refund requests, alleged a controversy ripe for judicial resolution.

We therefore reverse the Court of International Trade's dismissal for lack of subject matter jurisdiction of Ford's claims concerning entries that CBP liquidated post-complaint.

B

We next turn to the Court of International Trade's dismissal of certain Ford claims for lack of case or controversy. The court concluded that Ford "abandoned" certain claims with a dispositive concession in one of its briefs. *Dismissal Op.*, 716 F. Supp. 2d at 1310–11. Although the Court of International Trade did not use the term, we view this dismissal as rooted in the well-recognized rule that if its underlying controversy disappears, a case is moot and non-justiciable. *See, e.g.*, *Kaw Nation v. Norton*, 405 F.3d 1317, 1322 (Fed. Cir. 2005) (holding case moot where one party voluntarily abandoned its arguments). On appeal, Ford argues that it made no such concessions, and the court erred in dismissing the claims. As already stated, this court reviews dismissals for non-justiciability de novo. *King Pharms.*, 616 F.3d at 1282.

The trial court's mootness dismissal affects only Ford's first "cause of action," i.e., its claim for declaratory judgment on the grounds that the disputed entries were neither extended nor liquidated within the one-year period set by Congress. *See* 2d Am. Compl. ¶¶ 66–70. Ford pled numerous other "causes of action" seeking the same relief (declaratory judgment of liquidation) on alternative legal theories, e.g., that if there were extensions, they were invalid because CBP did not issue notices (cause of action 2); that if CBP did issue notices, the extensions were invalid because CBP did not give the required reasons (cause of action 3); and that if CBP did

give reasons, those reasons were legally improper (cause of action 4). The propriety of such pleading is not disputed. *See* Ct. Int'l Tr. R. 8(e)(2) (permitting a party to plead claims "alternately or hypothetically, either in a single count or defense or in separate ones").

The court predicated its dismissal of the first cause of action on the following statement by Ford:

> Although Ford has only just learned of this development, . . . it appears that on March 29, 2009, [CBP] extended the liquidation of all but one of Ford's 2006 Reconciliation Entries. Notwithstanding any deficiencies in [CBP's] attempt to extend the entries, pursuant to 19 C.F.R. § 159.12(a)(1), the extensions expired on March 29, 2010.

Ford Mot. for TRO, *Ford* (Ct. Int'l Tr. June 23, 2010), Dkt. #36. The court read this as a concession that the six entries in question "were validly extended." *Dismissal Op.*, 716 F. Supp. 2d at 1311. Since Ford's first cause of action was predicated on the entries not having been extended, the court concluded that Ford had abandoned its claim applying that line of argument to those entries. The court subsequently confirmed, however, that Ford remained free to argue that these "extensions" were not procedurally valid or were otherwise unlawful. *Ford*, slip op. at 3 (Ct. Int'l Tr. Oct. 15, 2010), Dkt. #45 (denying reconsideration of *Dismissal Opinion*).

On appeal, Ford contends that the dismissal was improper because its statement did not plainly concede these claims. Ford points to the paucity of record evidence on the question of whether CBP did or did not administratively "extend" these entries and contends that, in these circumstances, its statement should be interpreted as at best equivocal.

We agree with Ford. Neither on its own nor in context does the quoted statement demonstrate that the dispute between Ford and the government as to whether the entries had been extended had become moot. We read Ford's statement as only acknowledging that CBP had taken some administrative action with the purpose of extending liquidation, and not necessarily as conceding that extension had been effectuated.

The government's argument that Ford retained its right to contest the legal validity of any extension by CBP misses the mark. It is not the right to contest the extension's validity that was prematurely dismissed, but the right to contest that an extension had occurred at all.

We therefore reverse the Court of International Trade's dismissal of Ford's first cause of action for lack of case or controversy.

C

Finally, the reasoning expressed above requires that we vacate the Court of International Trade's dismissal of those claims over which the court acknowledged it had subject matter jurisdiction. The court's dismissal of these claims was discretionary, but the court's reasoning extended in significant part from its flawed jurisdictional analysis. For example, the court reasoned that because Ford had conceded the extension of certain entries (a finding we have now reversed), "its remaining claims form a weak basis for granting declaratory relief." *Dismissal Op.*, 716 F. Supp. 2d at 1313. We therefore vacate the court's discretionary dismissals, with the understanding that the Court of International Trade retains authority, but no obligation, to revisit this question on remand.

## IV

For the above-stated reasons, the judgment of the Court of International Trade is reversed-in-part, vacated-in-part, and remanded for further proceedings consistent with this opinion.

**REVERSED-IN-PART, VACATED-IN-PART, AND REMANDED**

COSTS

No costs.