# United States Court of Appeals
# for the Federal Circuit

---

**FORD MOTOR COMPANY,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2014-1726

---

Appeal from the United States Court of International Trade in No. 1:09-cv-00151-MAB, Judge Mark A. Barnett.

---

Decided: February 3, 2016

---

STEPHANIE A. DOUGLAS, Bush Seyferth & Paige, PLLC, Troy, MI, argued for plaintiff-appellant. Also represented by MATTHEW CALIGUR, Baker & Hostetler LLP, Houston, TX.

JUSTIN REINHART MILLER, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, argued for defendant-appellee. Also represented by AMY M. RUBIN, JEANNE E. DAVIDSON, JOYCE R. BRANDA.

---

Before NEWMAN, DYK, and O'MALLEY, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* DYK.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

DYK, *Circuit Judge.*

Ford Motor Company ("Ford") appeals from a final judgment of the Court of International Trade ("CIT") dismissing all of its claims. *Ford Motor Co. v. United States*, 992 F. Supp. 2d 1346 (Ct. Int'l Trade 2014) ("*Ford III*"). The CIT dismissed some of Ford's claims as barred by the statute of limitations under 28 U.S.C. § 2636(i) and declined to exercise its discretionary jurisdiction to issue declaratory relief for the remainder of Ford's claims.

We hold that we need not address the statute of limitations issue because the statute is not jurisdictional. We further hold that the CIT did not abuse its discretion in declining to issue declaratory relief. While the CIT did not reach the declaratory judgment issue with respect to some of Ford's claims, we conclude that the CIT would have denied all claims on that ground, and that a remand is therefore unnecessary. Accordingly, we affirm.

## BACKGROUND

In 2004 and 2005, Ford imported Jaguar-brand cars from the United Kingdom into the United States. On the cars' entry into the United States, Ford deposited estimated duty payments with Customs and Border Protection ("Customs"). Ford later concluded that it overpaid the duty actually owed because its estimates had been too high. Ford then filed nine reconciliation entries with Customs between June 2005 and October 2006, seeking a total refund of about $6.2 million.

Customs may liquidate an entry, which involves a determination of the amount of duty owed, based on any

"just, impartial, and uniform appraisement" prescribed by the Secretary of the Treasury.  19 U.S.C. § 1502.  Customs has one year from the time of filing to liquidate an entry under 19 U.S.C. § 1504(a).  It may extend that period if it needs additional information to properly appraise or classify the imported merchandise or if the importer requests an extension and demonstrates good cause.  *See* 19 U.S.C. § 1504(b).  Customs is entitled to a maximum of three one-year extensions.  19 C.F.R. § 159.12(a), (d), (e).  If not extended before the expiration of any one-year period, the entry "shall be deemed liquidated at the rate of duty, value, quantity and amount of duties asserted by the importer of record."  19 U.S.C. § 1504(a)(1).  Similarly, if Customs has not liquidated an entry after the maximum extended period of four years, it is deemed liquidated by operation of law.  *See* 19 U.S.C. § 1504(b); 19 C.F.R. § 159.12(f).  When an entry is deemed liquidated, Customs forfeits the ability to recalculate the duty owed; instead, the duty is calculated based on the importer's own asserted rate, value, and quantity.  *See* 19 C.F.R. § 159.12(f).  Here the rate "asserted" by the importer is the rate asserted in its reconciliation entries rather than the rate asserted at the time of original entry.[1]  Customs seeks to recalculate the duty owed, urging that the original rate was correct.

On April 15, 2009, Ford filed suit in the CIT to challenge Customs' treatment of its nine reconciliation entries, arguing that Customs had failed to properly extend the liquidation period in accordance with 19 U.S.C.

---

[1]    "A reconciliation is treated as an entry for purposes of liquidation, reliquidation, recordkeeping, and protest."  19 U.S.C. § 1401(s).

§ 1504(b) and therefore could not recalculate the duty.[2] Customs contended that it had extended the liquidation periods, which did not expire until between June 29, 2009, and October 4, 2010, four years after entry. At the time Ford filed suit, Customs had yet to liquidate any of Ford's nine entries. Because there were no liquidation decisions to protest under 28 U.S.C. § 1581(a), Ford brought its challenge under 28 U.S.C. § 1581(i). The CIT's residual jurisdiction provision is available only when jurisdiction under subsections (a) through (h) of § 1581 is not available.[3]

Ford sought a declaratory judgment that its entries had deemed liquidated as a matter of law, and, therefore, that it was entitled to a $6.2 million refund based on its duty calculation asserted in the reconciliation entries.

---

[2]    As relevant to this appeal, Ford's pleadings consist of six claims. Claim 1 alleges that Customs failed to extend liquidation; Claim 2 alleges that even if Customs did extend liquidation, it never issued notices as required by 19 U.S.C. § 1504(b) and (c); Claim 3 alleges that, even if customs issued notices, the notices lacked reasons for extension as required by § 1504(b) and (c); Claim 4 alleges that even if Customs did extend, it had no valid reason to extend under § 1504(b); Claim 5 applies only to Entries B and C, which liquidated on June 19, 2009, and July 17, 2009, respectively, and alleges that Customs' purported reliquidations of these entries occurred more than four years after filing, in violation of § 1504(b); Claim 6 applies only to Entry D, which was liquidated on August 14, 2009, and alleges that Customs failed to fix the final appraisement or amount of duty as required by § 1500(a) and (c).

[3]    *See Ford Motor Co. v. United States*, 688 F.3d 1319, 1323 (Fed. Cir. 2012) ("*Ford II*").

During the pendency of that action, Customs liquidated five of the nine entries. The government moved to dismiss Ford's claims for lack of jurisdiction. The CIT granted the government's motion as to those entries that had already liquidated, ruling that § 1581(a), not § 1581(i), was the proper basis to challenge those entries. *Ford Motor Co. v. United States*, 716 F. Supp. 2d 1302, 1310 (Ct. Int'l Trade 2010) ("*Ford I*"). As to the four entries that remained unliquidated, the CIT recognized that § 1581(i) jurisdiction was proper but declined to issue discretionary declaratory relief, explaining that Ford would have ample opportunity to assert claims for those entries in a future § 1581(a) action.

Shortly after *Ford I*, Customs liquidated Ford's remaining entries, declining to provide Ford with any refund. Ford protested the merits of all nine of Customs' liquidations. Customs denied the protest for Ford's 2005 entries, and Ford commenced a separate court action challenging that denial under § 1581(a), which is pending as of the time of this appeal. *Ford Motor Co. v. United States*, Ct. Int'l Trade No. 10-00138. Ford's protest for its 2006 entries is currently held before Customs pending the outcome of this appeal.

Ford appealed from the CIT's decision in *Ford I* dismissing its claims for a declaratory judgment that its entries had deemed liquidated as a matter of law at Ford's asserted rate. *See Ford II*, 688 F.3d at 1321. We reversed the CIT's dismissal on jurisdictional grounds of those claims relating to the five entries that were liquidated during the pendency of the CIT action. *Id.* at 1324. We held that, based on the "time-of-filing rule," "the government's post-filings actions in liquidating the entries may have opened up a new avenue for judicial review under [28] U.S.C. § 1581(a), but the actions cannot defeat subject matter jurisdiction under § 1581(i)." *Id.* at 1327. We vacated the CIT's discretionary dismissal of

Ford's claims that remained unliquidated because the CIT's analysis "extended in significant part from its flawed jurisdictional analysis." *Id.* at 1330. We explained that the CIT "retains authority, but no obligation, to revisit [its declaratory judgment authority] on remand." *Id.*

On remand at the CIT, the government again moved to dismiss, this time arguing that Ford's claims directed to its 2005 entries were barred by the two-year statute of limitations under 28 U.S.C. § 2636(i), which governs § 1581(i) actions. The CIT again granted the government's motion to dismiss for all claims directed to the 2005 entries except Claim 5, finding that Ford's action was barred by the two-year limitations period, having been commenced more than two years after Ford reasonably should have known about the existence of those claims. *Ford III*, 992 F. Supp. 2d at 1356–57. Regarding Claim 5 and the claims directed to Ford's 2006 entries—as to which there was no statute of limitations issue—the CIT recognized that § 1581(i) jurisdiction was available but again declined to exercise its discretionary jurisdiction. *See id.* at 1359.

The CIT explained that "adjudicating the claims would not be an efficient and effective use of the court's time and resources," because Ford "retains the ability to seek relief" for all of its claims in its pending protest and § 1581(a) action. *Id.* The CIT further explained that "[t]he § 1581(a) case will allow [Ford] to challenge not only the question of whether the entries in question were deemed liquidated, but the substance of any actual liquidations or reliquidations that occurred (i.e., the merits of [Ford's] reconciliation claims), an option not available in this declaratory judgment case." *Id.* Ford appealed.

We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5). We review the CIT's dismissal for lack of

subject matter jurisdiction de novo. *Heartland By-Prods., Inc. v. United States*, 424 F.3d 1244, 1250 (Fed. Cir. 2005). We review the CIT's decision not to issue declaratory relief for abuse of discretion. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289–90 (1995); *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1288 (Fed. Cir. 2007).

DISCUSSION

I

As to Claims 1–4 and 6 concerning Ford's 2005 entries, we first consider whether the statute of limitations under 28 U.S.C. § 2636(i) is jurisdictional, such that we must address it before considering the merits. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Ford argues that our mandate in *Ford II* precluded the CIT from considering the statute of limitations because we reversed the CIT's dismissal for lack of subject matter jurisdiction, and the statute of limitations is jurisdictional. The government argues that the CIT was "powerless to adjudicate Ford's claims" because they fell outside of the CIT's authority under § 2636(i), and that the mandate in the original appeal is not a bar even though "the statute of limitations is . . . jurisdictional." Appellee's Br. at 31. We disagree with both parties. Section 1581(i)'s two-year statute of limitations is not jurisdictional.

Section 2636(i) of title 28 provides that a "civil action of which the Court of International Trade has jurisdiction under section 1581 of this title, other than an action specified in subsections (a)-(h) of this section, is barred unless commenced in accordance with the rules of the court within two years after the cause of action first accrues."

In *SKF USA, Inc. v. U.S. Customs and Border Protection*, 556 F.3d 1337, 1348 (Fed. Cir. 2009), we assumed without deciding that this statute of limitations was jurisdictional. In recent years, the Supreme Court has articulated a more stringent test for determining when statutory time limits are jurisdictional. *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1632–33 (2015), is the latest in a series of Supreme Court opinions developing this test.[4] The Court explained that there is a "high bar to establish that a statute of limitations is jurisdictional. In recent years, we have repeatedly held that procedural rules, including time bars, cabin a court's power only if Congress has clearly stated as much." *Id.* at 1632 (internal quotation marks and citations omitted). Absent such a clear statement, "courts should treat [a] restriction as nonjurisdictional." *Id.* (internal quotation marks and citations omitted). While Congress need not "incant magic words," it must "do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional." *Id.* (internal quotation marks and citations omitted). This is true "even when the time limit is important (most are) and even when it is framed in mandatory terms (again, most are)." *Id.* The statutory language, *see Arbaugh*, 546 U.S. at 515–16, placement of the provision within the statutory scheme, *Henderson*, 562 U.S. at 439, and "context, including [Supreme Court] interpretations of similar provisions in many years past," *Auburn Reg'l*, 133 S. Ct. at 825 (internal quotation marks and citations omitted), are indicative of whether a provision is jurisdictional.

---

[4]     *See, e.g.*, *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817 (2013); *Henderson v. Shinseki*, 562 U.S. 428 (2011); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010); *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006).

Recently in *Sikorsky Aircraft Corp. v. United States*, 773 F.3d 1315, 1320–22 (Fed. Cir. 2014), we followed those cases and held that the six-year limitations set forth in 41 U.S.C. § 7103(a)(4)(A) governing the Contract Disputes Act was not jurisdictional. We explained that the statute, which provides that "[e]ach claim by a contractor against the Federal Government relating to a contract . . . shall be submitted within 6 years after the accrual of the claim," did "not speak in jurisdictional terms," nor did its context "suggest that it is jurisdictional." *Id.* at 1321 (internal quotation marks and citations omitted). Because no "long-standing interpretation by the Supreme Court" counseled to the contrary, we thus held that the statute lacked "any special characteristic that would warrant making an exception to the general rule that filing deadlines are not jurisdictional." *Id.* at 1322.

Here, § 2636(i) similarly "does not speak in jurisdictional terms." *Id.* at 1321 (quoting *Auburn Reg'l,* 133 S. Ct. at 825). While the first clause of § 2636(i) references the CIT's "jurisdiction under section 1581 of this title," it does so only to distinguish the reach of § 2636(i) from § 2636(a)–(h), which covers all § 1581 actions other than the residual provision of § 1581(i). The remainder of § 2636(i), which provides the actual time limitation at issue here, simply provides that § 1581(i) actions are "barred unless commenced in accordance with the rules of the court within two years after the cause of action first accrues." 28 U.S.C. § 2636(i). This does not "suggest, much less provide clear evidence, that the provision was meant to carry jurisdictional consequences." *Henderson*, 562 U.S. at 438. Like the time limitations addressed in *Kwai Fun Wong* and *Sikorsky*, § 2636(i) "reads like an ordinary, run-of-the-mill statute of limitations, spelling out a litigant's filing obligations without restricting the court's authority." *Kwai Fun Wong*, 135 S. Ct. at 1633 (internal quotation marks and citations omitted). Indeed,

the text is even clearer here than in *Kwai Fun Wong* and *Sikorsky*, because the first clause of § 2636(i) provides that jurisdiction has already been established in all cases governed by the two-year limitations provision: "A civil action of which the Court of International Trade *has jurisdiction* under section 1581 . . . is barred unless" commenced within two years after accrual. 28 U.S.C. § 2636(i) (emphasis added).

Nor does the placement of § 2636(i) within the statutory scheme provide any indication that the provision is jurisdictional. The Court has "often explained that Congress's separation of a filing deadline from a jurisdictional grant indicates that the time bar is not jurisdictional." *Kwai Fun Wong*, 135 S. Ct. at 1633. Whereas § 2636 provides the time limitations for civil actions against the United States, a different section of title 28 confers jurisdiction on the CIT to hear such actions. *See, e.g.*, § 1581(i) (The CIT "shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers."). As in *Kwai Fun Wong*, "[n]othing conditions the jurisdictional grant on the limitations periods, or otherwise links those separate provisions." 135 S. Ct. at 1633. Treating § 2636(i)'s time bar as jurisdictional would thus "disregard the structural divide built into the statute." *Id.*

Finally, nothing in the history of the statute suggests that it is jurisdictional. Unlike *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 139 (2007), or *Bowles v. Russel*, 551 U.S. 205, 209 (2007), where "stare decisis" required following a long line of cases holding that the particular statutes of limitations were jurisdictional, this is not a situation in which longstanding precedent has interpreted the provision as jurisdictional. *See Sikorsky*, 773 F.3d at 1321–22. Accordingly, because Congress "failed to provide anything like the clear statement [the] Court has demanded before deeming a statute of limita-

tions" jurisdictional, we hold that § 2636(i) is not jurisdictional. *Kwai Fun Wong*, 135 S. Ct. at 1633. We thus need not address the limitations issue if the CIT properly dismissed the claims on other grounds.

## II

We first address whether the CIT abused its discretion in declining to issue declaratory relief for Ford's claims with respect to Claim 5 and all claims directed to the 2006 entries. We review a trial court's decision to decline declaratory relief for abuse of discretion. *Wilton*, 515 U.S. at 289–90; *Sony Elecs.*, 497 F.3d at 1288. An abuse of discretion "may occur when the trial court's decision was based on an incorrect conclusion of law or clearly erroneous findings of fact, was devoid of any evidence in the record upon which the court rationally could have based its decision, or was clearly unreasonable or arbitrary." *Serco Servs. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995) (internal quotation marks and citation omitted).

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. Trial courts retain "unique and substantial discretion" in deciding whether to exercise jurisdiction to issue declaratory relief. *Wilton*, 515 U.S. at 286. "[T]here is no absolute right to a declaratory judgment, for the statute specifically entrusts courts with discretion to hear declaratory suits or not depending on the circumstances." *Serco Servs. Co., L.P.,* 51 F.3d at 1039. Trial courts "must determine whether hearing the case would serve the objectives for which the Declaratory Judgment Act was created," namely, allowing "a party who is reasonably at legal risk because of an unresolved

legal dispute[] to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side." *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1354–55 (Fed. Cir. 2004) (internal quotation marks and citations omitted). There "must be well-founded reasons for declining to entertain a declaratory judgment action." *Id.*

In the original appeal, while we vacated the CIT's discretionary dismissals of the declaratory claims, we remanded "with the understanding that the Court of International Trade retains authority, but no obligation, to revisit this question on remand." *Ford II*, 688 F.3d at 1321, 1330. On remand, the CIT again declined to issue discretionary declaratory relief for most of Ford's claims, explaining that "adjudicating the claims would not be an efficient and effective use of the court's time and resources," because Ford "retains the ability to seek relief" for these claims in its pending protest and § 1581(a) action. *Ford III*, 992 F. Supp. 2d at 1359. The CIT further explained that "[t]he § 1581(a) case will allow [Ford] to challenge not only the question of whether the entries in question were deemed liquidated, but the substance of any actual liquidations or reliquidations that occurred (i.e., the merits of [Ford's] reconciliation claims), an option not available in this declaratory judgment case." *Id.* Ford contends that the CIT abused its discretion in declining to exercise discretionary jurisdiction because of the general rule favoring first-filed actions and because it would be less efficient to defer resolution until the § 1581(a) actions. We disagree.

As Ford points out, first-filed actions are generally preferred "unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise." *Serco*, 51 F.3d at 1039 (internal quotation marks and citations omitted). Accordingly, the "trial court's discretion tempers the preference for the

first-filed suit, when such preference should yield to the forum in which all interests are best served." *Id.* (internal quotation marks and citations omitted). Here the first-filed suit—the declaratory action—does not provide a venue for resolution of the correct amount of duty for the entries. Section 1581(i) only allows Ford to challenge whether its entries deemed liquidated as a matter of law. It does not permit Ford to challenge the correctness of Customs' actual duty calculations if the entries are not deemed liquidated as a matter of law. *See Ford II*, 688 F.3d at 1328. On the other hand, Ford's protest action pursuant to § 1581(a) encompasses both questions—the deemed liquidation issue and the proper rate of duty if the entries were not deemed liquidated.

All of Ford's entries have now liquidated, and by filing a protest Ford has challenged the merits of those entries before Customs. Customs denied the protest for Ford's 2005 entries, and Ford has already filed a § 1581(a) action challenging that denial. Section 1581(a) will be available for Ford's protest of its 2006 entries when Customs acts on that protest, which Customs has said it will do upon resolution of this appeal. *See* J.A. 139. The CIT did not abuse its discretion in dismissing Ford's declaratory claims in favor of addressing both the issue of whether Ford's entries deemed liquidated and the correct rate of duty in one streamlined § 1581(a) action.

We have previously held that § 1581(a) is a suitable avenue for resolving challenges, like Ford's, to Customs' extensions of liquidation and issues of deemed liquidation. *See, e.g.*, *Chemsol, LLC v. United States*, 755 F.3d 1345, 1355 (Fed. Cir. 2014); *Ford Motor Co. v. United States*, 286 F.3d 1335, 1339 (Fed. Cir. 2002). Indeed under these circumstances, § 1581(a) is likely to provide a superior forum even as to the deemed liquidation issue, because § 1581(a) review is *de novo* and conducted based on a complete record developed before the court, *see* 28 U.S.C.

§ 2640(a)(1), whereas § 1581(i) review is confined to the more limited record developed before Customs, *see* 28 U.S.C. § 2640(e). While the existence of another adequate remedy does not necessarily bar a declaratory judgment, *see, e.g.*, *Powell v. McCormack*, 395 U.S. 486, 499–500 (1969), district courts may refuse declaratory relief where an alternative remedy is better or more effective. *See, e.g.*, *Serco*, 51 F.3d at 1039; *Aetna Cas. & Sur. Co. v. Jefferson Tr. & Sav. Bank of Peoria*, 993 F.2d 1364 (8th Cir. 1993). Here the alternative remedy would be more effective, and the CIT was justified in refusing declaratory relief.

Notwithstanding Ford's argument, *Capo* is not to the contrary. In *Capo* we held that the district court's refusal to afford declaratory relief was an abuse of discretion because there was a direct charge of infringement by the patentee, Capo was continually threatened by the prospect of an infringement suit, and no infringement action had been commenced. 387 F.3d at 1355–56, 1358. Because dismissal left Capo "helpless and immobile so long as the patent owner refuses to grasp the nettle and sue," we held that the district court's dismissal contravened the purpose of the Declaratory Judgment Act. *Id.* at 1358 (internal quotation marks and citation omitted). *See also Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 936–39 (Fed. Cir. 1993). Here, on the other hand, Ford is not forced to "await the commencement of legal action by the other side," *Capo*, 387 F.3d at 1352, because Ford itself has already protested Customs' liquidations and its protests will be acted on upon resolution of this appeal.[5]

---

[5]   If Customs does not act promptly, Ford will not be without a remedy. A protestor may request an accelerated disposition of protest at any time "concurrent with or following the filing of" its protest under § 1515(b), which

*See* J.A. 139. The CIT did not abuse its discretion in declining declaratory relief.

### III

The CIT's reasoning for declining to exercise its discretionary jurisdiction applies equally to Claims 1–4 and 6 relating to Ford's 2005 entries, which the CIT found time-barred. Indeed, these claims are even more clearly amenable to resolution in a future § 1581(a) action than the claims relating to Ford's 2006 entries because Customs has already rejected Ford's protest with respect to its 2005 entries and Ford has already brought a § 1581(a) action directly challenging that denial, which is currently pending before the CIT. *See Ford Motor Co. v. United States*, Ct. Int'l Trade No. 10-00138. Where the CIT dismisses for lack of subject matter jurisdiction and it is clear that the CIT would have declined to exercise its discretionary jurisdiction in any event, we need not remand. *Fleshman v. West*, 138 F.3d 1429, 1433 (Fed. Cir. 1998) (a reviewing court may "affirm[] an agency decision on a ground different from the one used by the agency" if "the agency would have reached the same ultimate result had it considered the new ground") (internal quotation marks and citations omitted). Here, the CIT already refused to exercise its discretionary jurisdiction over Claim 5 as directed to Ford's 2005 entries, and explicitly stated that the same reasoning applies to the other claims directed to Ford's 2005 entries that it found time-barred.

---

compels Customs to act on the protest within thirty days. A protest "which has not been allowed or denied in whole or in part within thirty days . . . shall be deemed denied." 19 U.S.C. § 1515(b). A protestor may then appeal under § 1581(a). *See, e.g., Norman G. Jensen, Inc. v. United States*, 687 F.3d 1325, 1329–30 (Fed. Cir. 2012).

> [Ford] retains the ability to seek relief for [the time-barred] claims in the § 1581(a) case pending before the court. . . . In addition to being an adequate vehicle for the court to address the issues [Ford] raised within the time-barred claims, litigating the claims pursuant to § 1581(a) would provide a more complete avenue for judicial review of Customs' actions. The § 1581(a) case will allow [Ford] to challenge not only the question of whether the entries in question were deemed liquidated, but the substance of any actual liquidations or reliquidations that occurred (i.e., the merits of [Ford's] reconciliation claims), an option not available in this declaratory judgment case.

*Ford III*, 992 F. Supp. 2d at 1359 (citation omitted). Because the CIT would have dismissed on discretionary grounds the same claims it found time-barred, a remand is unnecessary. We may and do affirm the dismissal on that ground as being within the CIT's discretion.

**AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

---

**FORD MOTOR COMPANY,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2014-1726

---

Appeal from the United States Court of International Trade in No. 1:09-cv-00151-MAB, Judge Mark A. Barnett.

---

NEWMAN, *Circuit Judge*, dissenting.

It is not seriously disputed by the Customs Service, or by the panel majority, or by government counsel, that Ford overpaid import duties by 6.2 million dollars, and timely filed for reconciliation and refund. The government has for nine years avoided refunding the overpayment. Even on this appeal, the government does not dispute the merits of the claim, and the record filed with the Court of International Trade is replete with timely, full and compelling documentation of Ford's entitlement to the refund. Thus I respectfully dissent from my colleagues' holding that Ford must now repeat this administrative process; it is time that the refund be paid.

In two trips to the Court of International Trade, as summarized by Ford, "the CIT has twice dismissed Ford's claims, holding the first time that Ford was not patient enough with Customs to allow the administrative process to unfold, and thus filed its claims too early, and the second time that Ford was too patient with Customs' inaction, and thus filed its claims too late."  Ford Br. 2. The administrative record, upon its release to the Court of International Trade, reveals multiple internal verifications of Ford's refund entitlements.

Ford's reconciliation methodology and entries were not disputed, and were accepted for Ford entries of a different product.  Two separate divisions of Customs, the Area Director of the Port of Newark and the National Commodities Specialist Division, confirmed Ford's entitlement to refund in early 2006.  However, these internal notices were followed by nearly three years of silence and inaction, although Ford apparently pressed Customs for response.  Customs issued no decision that could be protested, requiring Ford to file suit in the Court of International Trade under 28 U.S.C. §1581(i).  Thereafter Customs apparently withdrew its prior internal approvals.

These procedures appear to be irregular.  This is not a complicated claim; Ford overestimated the expected value of Jaguar imports and, after the value was accurately determined, according to appraisement methods found acceptable, Ford entered the statutory reconciliation procedure and documented the $6.2 million in overpayments.  The reconciliation statute and regulations provide that Customs has one year to liquidate the reconciliation entries, 19 U.S.C. § 1504(a)(1), or to extend liquidation for up to three years if Customs lacks the information necessary to complete the liquidation.  The statute and regulation only permit Customs to extend liquidation if "the information needed for the proper appraisement or classi-

fication of the imported or withdrawn merchandise . . . or for ensuring compliance with applicable law, is not available." 19 U.S.C. § 1504(b); *see* 19 C.F.R. § 159.12(a)(1), (d). The only times Customs requested additional information was in 2005, which was promptly provided, and in July 2009 *after* Ford filed this suit. There is no objection to Ford's data, price information, or anything else.

The Customs actions are devoid of support. On this appeal, the government brief is silent; no justification is offered, although it appears that statute and regulation have not been met.

In 2009, during these legal proceedings, Customs re-liquidated Ford's entries, refusing to pay the refund. The reason given is that Ford did not provide certain documentation that was requested, with one month's deadline, after three years of silence and inaction. The re-liquidations were not based on any position that Ford's appraisement and reconciliation were flawed. Although the panel majority announces that "Customs seeks to recalculate the duty owed, urging that the original rate was correct," Maj. Op. at 3, that is strange, for nowhere does Customs state that the overpayments were correct.

The government, in its brief on this appeal, presents no argument that the duty should be recalculated—leaving uncertainty as to the source of my colleagues' statement. Customs simply re-liquidated the entry at the original overpaid amount, ignoring the law and regulations of reconciliation and refund and ignoring its own internal documents that refunds were due.

The government's brief does not mention the overpayment, the litigation history, or the statute or regulations. Although my colleagues now hold that the claim requires resolution, their proposal is that Ford should start again, to request the refund that was first requested in 2005. However, the record of overpayment and refund

obligation is not now challenged. The government does not now argue otherwise.

The judicial role is to bring the matter to a close, not to start again. 28 U.S.C. § 2106 (appellate court may "reverse any judgment . . . and direct the entry of such appropriate judgment, decree, or order . . . as may be just under the circumstances"); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 7, 11 (Dec. 31, 2015) (judges should "take on a stewardship role" to achieve "speedy, fair and efficient justice"). The panel majority apparently agrees that Ford is entitled to the refund. Indeed, the government does not dispute the merits of Ford's entitlement, after six years of this litigation. On the unanimous holding that Ford is not barred from receiving the refund, the appropriate judicial role is to order the refund, and close the case.